TYLER *v.* MAGWIRE.

The Supreme Court of the State of Missouri, on appeal, dismissed a petition which sought to have the title to lands held by the defendant, under a patent from the United States, divested, and vested in the complainant.

From this decree of dismissal a writ of error brought up the case under the twenty-fifth section of the Judiciary Act, the complainant claiming the land under a former patent from the United States.

This court determined that the *legal title* to the premises was in the complainant under the second patent, reversed the decree, and remanded the cause " for further proceedings in conformity to the opinion of the court " (8 Wallace, 672). The opinion given, declared also that on the merits (which were gone into, and in which utterance was given as to every point which it was necessary to decide in order to dispose of the case on them), the case was with the plaintiff or complainant.

On the presentation of the mandate to the Supreme Court of the State, they directed it to be filed, and entered up an order reversing their former decree, and the cause again coming up to be disposed of, the court decided that the legal title to the premises was vested by the second patent in the complainant, as declared by this court, and that on such a title under the laws and practice of the State there was a plain and adequate remedy at law, and that equity had no jurisdiction of the case made by the petition, and, therefore, decreed dismissing the petition.

To this decree the complainant sued out a second writ of error, under the twenty-fifth section.   *Held—*

That the legal sufficiency of the ground maintained by the Supreme Court of the State for its decree, to wit, that by the laws and practice of the State the complainant's remedy on a legal title was at law, and not in equity, is a question within the jurisdiction of this court, and revisable under the twenty-fifth section on a second writ of error.

That whether the legal title was in the complainant, and whether he had an adequate remedy at law, are questions that could only have been properly made in the court of original jurisdiction, or " perhaps before this court on the first writ of error ; but it is too late to raise such questions after the whole case had been decided, and the cause remanded for final judgment." That under the Judiciary Act, as well as under that of the 5th February, 1867, amendatory of it, on a second writ of error to a State court, this court "may proceed to a final judgment and award execution."

A decree was, therefore, entered up reversing the decree of the State court, and declaring the title to the lands in controversy to be vested in the complainant, and ordering a writ of possession to be issued by the clerk of this court, directed to the marshal thereof.

APPEAL from the Supreme Court of Missouri; the case being thus:

The constitution of Missouri ordains:

" That the right of trial by jury shall remain inviolate."

The code of the same State enacts:

" There shall be in this State but one *form of action* for the enforcement or protection of private rights, and the redress or

the prevention of private wrongs, which shall be denominated a civil action.*

"Suits may be instituted in courts of record by filing in the office of the clerk of the proper court, a petition setting forth the plaintiff's cause or causes of action, and remedy sought, &c.†

"The first pleading on the part of the plaintiff is the petition, which shall contain: (1.) The title of the cause, specifying the name of the court and county in which the action is brought, and names of parties to the action, plaintiffs and defendants. (2.) A plain, concise statement of the facts constituting a cause of action, without unnecessary repetition. (3.) A demand of the relief to which a plaintiff may suppose himself entitled.‡

"The only pleading on the part of the defendant is, either a demurrer or an answer.§

"SECTION 6. The defendant may demur to the petition when it shall appear upon the face thereof, either (1) that the court has no jurisdiction of the person of the defendant, or the *subject of the action;* or (2) that the plaintiff has no legal capacity to sue; or, &c., &c.

"SECTION 10. When any of the matters enumerated in section six (the last quoted section) do not appear upon the face of the petition, the objection may be taken by answer. If no such objection be taken either by *demurrer or answer*, the defendant shall be deemed to have waived the same, excepting only the objection to the *jurisdiction of the court over the subject-matter of the action, and excepting the objection that the petition does not state facts sufficient to constitute a cause of action.*"‖

This provision of the constitution and these provisions of the code being in force, one Magwire, on the 18th of September, 1862, filed his petition in the Court of Common Pleas of St. Louis, Missouri, against Tyler and forty-three other defendants, stating that on the 1st of June, 1794, Joseph Brazeau had a grant of 4 x 20 arpents of land along the bank of the Mississippi River, near the village of St. Louis; that on the 9th of May, 1798, he sold and conveyed 4 x 16 arpents, being the northern part of the tract, to Louis La-

---

* Revised Statutes of Missouri, 1216.        † Ib. 1222.
‡ Ib. 1229.          § Ib. 1230.          ‖ Ib. 1231.

baume, reserving the 4 x 4 arpents at the southern end for himself; that he, Magwire, the plaintiff, by a chain of conveyances, became the owner of said 4 x 4 arpents; that Labaume, after purchasing the said 4 x 16 arpents, February 15th, 1799, procured an extension of his limits west to the aggregate quantity of 360 arpents, and the same was surveyed to him April 10th, 1799; that this survey was made *contrary to the terms of the grant to Labaume,* and so that, *by mistake or design,* Labaume included in the survey of his enlarged grant the Brazeau tract, which he did not own; that on the 22d of September, 1810, the board of commissioners for the adjustment of land titles in Missouri confirmed to Brazeau his 4 x 4 arpents, and to Labaume his land; that afterwards, and notwithstanding the said 4 x 4 arpents justly and honestly belonged to the plaintiff, the defendants and others, in combination and confederacy, procured a survey to be made under the authority of the United States in such manner as to include the whole Brazeau tract in the claim of Labaume, and procured under like authority a patent to be issued granting the land covered by said survey to the legal representatives of said Labaume; *that the said survey and patent of the Labaume confirmation were issued and procured by said defendants by fraud, covin, and misrepresentation;* that on the 20th of May, 1862, the Brazeau confirmation of 4 x 4 arpents was surveyed inside the exterior limits of the survey and patent of Labaume, and on the 10th of June, 1862, a patent was issued to Brazeau, or his legal representatives, therefor; that each of the defendants claimed an interest in the said Brazeau tract, and was in possession thereof, and had received the rents and profits of the same; that every one of them had notice of the rights of the plaintiff under Brazeau, and that all the defendants had confederated and combined to keep the plaintiff out of possession of the lands claimed, and the rents and profits; that the patent and survey to Labaume's representatives were older than the patent and survey to Brazeau's representatives; that defendants continually assert the validity of the Labaume title and the invalidity of the Brazeau title, and that the said patent and .

survey for Labaume's representatives, so procured by fraud, covin, and misrepresentation, conflicted with the patent and survey for Brazeau's representatives, and constituted a cloud upon the plaintiff's title.

" Wherefore,"—thus ran the prayer of the plaintiff's petition—" to the end that *equity* and justice may be meted out to the plaintiff, and that he may be protected in his just rights," the plaintiff prayed:

1. That the court would divest out of the defendants 'all right, title, and interest acquired *or claimed by them and each of them under Labaume.*

2. And would vest the same in the plaintiff.

3. And would put the plaintiff in possession.

4. And would cause an account to be taken of the rents and profits of the land, and give to the plaintiff judgment therefor.

5. And would give to him "*such other relief as might be proper in the case.*"

The patent to Labaume's representatives granted all the land in its exterior limits, " *saving and reserving any valid adverse right that might exist to any part thereof.*"

The patent to Brazeau's representatives granted all the land included in its exterior limits, "*saving and reserving any valid adverse right which might exist to any part thereof.*"

The defendants answered on the merits of the case to the following effect:

1. That the 4 x 4 arpents confirmed to Brazeau were not properly located by the United States survey thereof inside of Labaume's survey.

2. That the confirmation to Brazeau was void.

3. That the survey for Brazeau's representatives was void for want of legal authority in the officers to make it.

4. That the patent to them was void for the same reason.

5. That the plaintiff, claiming under the confirmation and survey for Brazeau's representatives, was estopped to locate the land inside the Labaume patent, by *matter in pais*, long before their date.

6. That the survey and patent for Labaume's representatives vested a title in them in fee simple.

7. That the defendants had no notice of Brazeau's claim, and were innocent purchasers of the Labaume title.

8. That the plaintiff, claiming under Brazeau, was barred by the statute of limitations.

The defendants denied that any part of the 4 x 4 of Brazeau was inside the Labaume patent; that the patent or survey for Labaume's representatives was procured by fraud, covin, or misrepresentation; that the plaintiff had the Brazeau title to the 4 x 4.

They set forth a former suit and judgment against the plaintiff prior in date to the plaintiff's survey and patent, in bar of this suit.

And, finally, denied every averment in the plaintiff's petition in conflict with any part of their answer.

And, "*so having fully answered, the defendants asked for judgment and their costs.*"

The cause "having been submitted to the court for a decision on the plaintiff's petition, and the answers of all the defendants and the exhibits and other evidence in the cause," the court found "*all the issues in the cause for the plaintiff;*" that the survey for Labaume, in 1799, was made to include the Brazeau's land by mistake or design; that the land was situated inside of the Labaume survey and patent; and that the Labaume survey and patent were issued and procured by fraud and misrepresentation, and in combination and confederacy by the defendants to keep the plaintiff out of possession of his property, and its rents and profits.

The court then entered a decree extinguishing the claims of the defendants in these words:

"The 4 x 4 arpents is hereby decreed to the plaintiff, and all the right, title, and interest of each and every one of said defendants in and to said tract of land is hereby divested out of said defendants, and each of them, and is vested in and passed to plaintiff, to have and to hold to said plaintiff, his heirs, and assigns;" and "it is ordered, adjudged, and decreed that plaintiff do have and recover of defendants respectively the rents

and profits accrued during the respective possessions, and foras-
much as the court is not advised what is the amount and other
particulars thereof, Alexander Martin is appointed commissioner
to take an account," &c.

As soon as this finding and decree was made, the defend-
ants moved for a new trial, because the court had improperly
received or rejected evidence; because of an alleged erroneous
holding which it had made about the power of a Secretary
of the Interior, and because the decision was against *law* and
*equity*, and against the evidence and the weight of evidence.
The motion for new trial was overruled, and the defend-
ants appealed to the Supreme Court of Missouri. That
court reversed the judgment of the Court of Common Pleas,
and dismissed the plaintiff's petition. The grounds on
which this reversal was made were not stated in the judg-
ment as entered of record.*

---

* The *opinion of the court*, which, however, according to the well-settled
rule of this court, would not, even if inserted in the transcript, make any
part of the *record*, disclosed the grounds of the reversal. (See 40 Missouri, 433.)

The opinion opens with the declaration that the suit is one " in the nature
of a bill of equity, seeking to divest out of the defendants the title held by
them, and to vest the same in the plaintiff, and to put him in possession," &c.

" The answer denies the equities . . . pleads in bar a final decree in chan-
cery, in a former suit, between the same parties, and insists that the suit is
barred by the great lapse of time."

The court then enters into a comparison of title under the patents to the
respective parties, and considers the equities lying behind the patents.

It then says:

" Courts of equity in this State exercise jurisdiction according to the principles of
equity jurisprudence, excepting only as the same may have been modified by some
special statute. . . . There is really no case made on the record which can entitle
the plaintiff to relief under any head of equity jurisprudence."

The court then sustains the plea of *res judicata*, saying that " the former
decree in chancery between these parties proceeded upon the same substantial
facts and grounds of equity that are here alleged again."

As respects the plea of the statute of limitations the court says:

" The great lapse of time and the statute of limitations have been urged on our
consideration. On this it will be enough to say, that the defence resting upon a
Spanish possession, under a concession and recorded survey, and continued to the
present time under an absolute title from the United States, dated from the year
1806, needs no help, and could derive no additional strength from any statutes of
limitations."

The judgment for these reasons was reversed and the petition dismissed.

The plaintiff claiming under a former patent from the United States then brought the case here,* as within the 25th section of the Judiciary Act,† under the assumption, of course, that the Supreme Court of Missouri had passed on his title set up under the United States, and had decided against it. It was here elaborately argued, and an opinion given by Mr. Justice Clifford in behalf of the court, in which it was decided "that the *legal title* to the tract of 4 x 4 arpents remained in the United States till June 10th, 1862; and that on that day, by virtue of a survey referred to and a patent of that date, Brazeau 'acquired the legal title to the tract.'" The opinion went, however, largely besides into the merits of the case, and gave utterance upon every question at issue between the parties which it was necessary to decide to dispose of the case on their merits. These it declared were entirely with the plaintiff or complainant, who, it said, was justly and honestly owner of the land, and ended with an order of reversal of the decree of the Supreme Court of Missouri, "with directions *to affirm the decree of the St. Louis Court of Common Pleas.*"

Immediately upon the announcement of this order, *Mr. P. Phillips, for the defendants in error,* remarking to the court that the mandate should be merely to reverse, and "to proceed in conformity with the opinion of this court," moved to reform the order; and the question whether the order to "affirm" was a proper one, was directed by the court to be argued. It was afterwards argued at length, Mr. Phillips and Mr. B. R. Curtis contending that it was not; but, as already said, that the decree in this court should be simply an order of reversal with directions to the Supreme Court of Missouri to proceed in conformity to the opinion that had been given here. The position of the counsel was that the answer of the defendants set up special defences involving the statute of limitations, *res adjudicata, bonâ fide* purchase, and similar matters of a local kind, purely, and over which the State court alone had jurisdiction; that the decree

---

* See Magwire *v.* Tyler, 8 Wallace, 650.

† See Appendix, where the section is set forth.

of the Supreme Court of Missouri had been silent as to the
grounds on which it dismissed the plaintiff's petition; that
while if that court passed *merely* on the title derived from the
United States (as in view of this court's taking jurisdiction
of the case was now to be assumed), this court, under the
twenty-fifth section, had authority to review and reverse it,
yet that under no circumstances had this court authority to
pass on those defences set forth in the record which were of
a local nature only; and that no *opinion* of the judges of this
court, separately or collectively, bound by *authority* the State
court of Missouri on those points, or could deprive the de-
fendants in error of the right to have that court pass upon
them. Any mandate, therefore (the learned counsel argued),
directing the Supreme Court of Missouri " to affirm the de-
cree of the St. Louis Court of Common Pleas" would be a
judgment by this court upon questions upon which it had
no authority to pass.

Mr. Justice CLIFFORD, delivering the opinion of the court
on this new matter of the propriety of the form of order, as
he had delivered that on the principal case, stated that the
court, in the opinion delivered in that principal case, had
" decided the following propositions," reciting numerous
propositions pertinent to the merits; and reciting also, spe-
cifically, the decision as to the *legal title's* being in Brazeau.
" Based upon these conclusions of law," the learned judge
said, " the court gave the directions recited in the order"
objected to; but now, after the argument upon the question
of its propriety, had " come to the conclusion that a different
direction would be more in accordance with the usual prac-
tice of the court."

The order was accordingly reformed, and changed into an
order such as the counsel for the defendants in error had
asked for; that is to say, changed *from* an order " to affirm
the decree of the St. Louis Court of Common Pleas" into
an order of reversal, with a remand " for further proceedings
in conformity with the opinion of the court." The learned
justice said, however:

" But the court adheres to the several propositions of law

here recited and refers to the opinion of the court delivered at the time the decree was entered as to the ground on which these conclusions rest."

The matter accordingly went back to the Supreme Court of Missouri on this mandate, upon which, as well as on the pleadings and proofs of record in the cause, it came on to be heard. Counsel for the defendant insisted that the Supreme Court of the United States having decided that the legal title was in the plaintiff, his only remedy was at law; that the whole scope and very prayer of the petition filed in the case was for equitable relief, and that the petition should therefore be dismissed.

Counsel of the plaintiff answered, that the code of practice adopted by the State of Missouri would not countenance such an objection; that under it there was no "bill in equity or other formal pleading;" that "justice was now administered without forms;" that the defendants having denied the plaintiff's right and submitted themselves to the judgment of the court, waived the plea of "remedy at law," even supposing the forms of equity pleading still to prevail in Missouri; that as the twenty-fifth section of the Judiciary Act gave the Supreme Court at Washington jurisdiction to pass on the questions involved in the construction of acts of Congress, that court had *implied* authority to pass also upon all incidental questions which were necessary to be determined in order to render a judgment in the case; that the said Supreme Court had done so, as would be seen by the report of the case in 8th Wallace, and that this concluded the Supreme Court of Missouri.

To this it was replied, that the Supreme Court of the United States had no more power to reverse a decision of the Supreme Court of the State on a local question, than the latter court had to reverse a decision of the former court on a Federal one; that while the court at Washington had assumed jurisdiction on a hypothesis that no other than a Federal question had caused the decree in the Supreme Court of Missouri, and could assume it on no other hypothesis, that hypothesis as matter of fact was not true; that

the decree in the said court, which was the mere legal con-
clusion of the opinion, was based upon several matters of
purely local jurisdiction; that the mandate of the Supreme
Court of the United States was entitled not to a blind sub-
mission, but to an intelligent acquiescence, and that its
meaning was to be ascertained by a careful examination of
the facts in the case, and the application of whatever opinion
had been given to those facts.*

The case having been fully argued before the Supreme
Court of Missouri, Mr. Justice WAGNER delivered the unani-
mous opinion of that tribunal.† Having referred to the de-
cision of the cause by that court here at Washington as re-
ported in 8th Wallace, he said:

"The only question which it was competent for the Supreme
Court of the United States to notice when the cause was re-
moved there, was the question of title arising out of the respec-
tive confirmations under which the parties claimed. Everything
else set up in the bill was peculiarly and exclusively of local
State jurisdiction, over which the National tribunal had no con-
trol, and concerning which an adjudication here is final.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"In conformity with the decision of the National court the
legal title is vested in the plaintiff, and his remedy is the next
question to be considered.

"That ejectment is the proper and appropriate remedy, where
a party has the title, to recover possession of real estate, is a
principle too well established to require argument or the cita-
tion of authorities. A bill in equity is not the proper remedy
to recover the possession of lands; and where there is an ade-
quate and complete remedy at law, a court of equity will not
interpose unless upon some matters coming under some peculiar
head of concurrent equity jurisdiction.‡

"In those cases where it is permissible under the code to
combine in the same proceeding or petition legal and equitable
claim, the matter in equity and the action at law must be sepa-
rately stated, and must necessarily be separately tried. Each

---

* Davis *v.* Packard, 8 Peters, 323; Mitchel *v.* The United States, 15 Id. 84.
† 47 Missouri, 125; October Term, 1870.
‡ Janney *v.* Spedden, 38 Missouri, 395.

count must be tried by itself, according to the prescribed mode in such actions and suits. In an action at law there is a constitutional right of trial by jury, which has no existence in equity. The courts in New York have held that an equitable cause of action to remove—as a cloud upon the plaintiff's title—a deed given by mistake by a third party to the defendants, under which, having fraudulently obtained possession by connivance with the plaintiff's tenant, he claims to hold as owner, and a claim to recover the possession of the premises, may be united in the same action and asserted in the same complaint. But it is also clearly held that where legal and equitable causes of action are united under the code, as to the former, on the trial of the causes, the issues must be submitted to a jury.*

"It has often been held in this court that in a bill to set aside a deed as fraudulent, the plaintiff cannot sue for the recovery of the possession of the land, and that proceedings instituted for the purpose of vacating title, vesting it in the plaintiff, and to eject a defendant and obtain possession, are fatally erroneous on writ of error or appeal, and cannot be sustained. When the decree is entered establishing the plaintiff's title, he must then pursue his remedy in ejectment for the possession. The defendant has a right to demand this. He has a right to have a jury pass upon the question of rents and profits, and upon other questions which may arise in that form of action.

"In like manner it has been held that a cause of action in ejectment cannot be united with a cause of action for partition of the premises sued for.†

"It is a grave error—an entirely mistaken notion—to suppose that all distinction between law and equity is abolished by our code of procedure. The line of demarcation—the great and essential principles which underlie the respective systems—is inherent and exists in the very nature of things. Although legal and equitable cases are to a certain degree blended as to form, the principles remain the same, and the court will not interfere and exert its equity powers in a strictly legal action.

"This principle is almost daily acted upon in our courts, and

* Bradley *v.* Aldrich, 40 New York, 510; Lattin *v.* McCarty, 41 Id. 107.
† See Peyton *v.* Rose, 41 Missouri, 257; Curd *v.* Lackland, 43 Id. 139; Young *v.* Coleman, Ib. 179; Gray *v.* Payne, Ib. 203; Wynn *v.* Cory, Ib. 301; Jones *v.* Moore, 42 Id. 413; Lambert *v.* Blumenthal, 26 Id. 471; Gott *v.* Powell, 41 Id. 416.

has been the uniform course of practice ever since the adoption of our new system. In all the States where the code has been instituted, the ruling has been harmonious in the same way. The statute enacts that ' there shall be in this State but one form of action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be denominated a " civil action." '

" In providing that there shall be but one form of civil action, the legislature cannot be supposed to have intended, at one stroke or sweeping enactment, to abolish the well-recognized and long-established distinction between law and equity. Such a construction would lead to perplexities and difficulties, infinite and endless in their character. The innovation extends only to the form of action in the pleadings. While the difference in form and the technicalities in pleadings have been dispensed with, and the party need only state his cause of action in ordinary and concise language, whether it be under assumpsit, trover, trespass, or ejectment, without regard to the ancient forms, still the distinction between these actions has not been destroyed, but remains the same. So cases legal and equitable have not been consolidated, although there is no difference between the form of the bill in chancery and the common-law declaration under our system, where all relief is sought in the same way from the same tribunal. The distinction between law and equity is as naked and as broad as ever. To entitle the plaintiff to an equitable interposition of the court, he must show a proper case for the interference of a court of chancery, and one in which he has no adequate or complete relief at law. The judgment vesting him with the legal title shows that he has a complete, appropriate, and ample remedy at law by ejectment. These plain principles were entirely overlooked at the trial in the Court of Common Pleas, but, as before remarked, according to the decision of the majority of the court, the case was instituted and tried upon a misapprehension.

" It results that so much of the motion as asks for an affirmance of the judgment of the Court of Common Pleas will be overruled, and, in accordance with the mandate, the judgment of this court will be reversed, and the petition dismissed."

The decree itself, which as it was relied on here by the counsel of the plaintiff below, as " the crucial test " of ju-

risdiction .in this court, it may be best to insert, was in these words:

"1. In conformity to the said mandate the judgment and decree of this court therein mentioned is hereby reversed; and thereupon this cause remains to be proceeded with in conformity to the opinion of the Supreme Court of the United States *and the laws of the State of Missouri*.

"2. This court doth find, and adjudge, and decree, that under and in conformity with the laws of the State of Missouri, the said petition of the said Magwire is a proceeding to obtain equitable relief only in respect to the lands in said petition mentioned, and that no right or title to any equitable relief touching the said lands, or any part thereof, is shown by the said petition and the proofs adduced in support thereof.

"3. The court doth find, adjudge, and decree, that in conformity with the laws of the State of Missouri the legal title to said land cannot be tried and adjudged or determined under said petition, and the proceedings thereunder, there being a plain, adequate, and complete remedy by an action of ejectment in conformity with the laws of the State of Missouri in that behalf, and no relief in the proceedings in equity pending before this court.

"4. The court doth find, adjudge, and decree, that in conformity with the laws of the State of Missouri, the petition of said Magwire is a proceeding for equitable relief only for the purpose of vesting the legal title by decree in said Magwire to the lands therein mentioned. The legal title to which was admitted by plaintiff in his petition to be held by defendants, and the only judgment that, under the laws of the State of Missouri, can be entered therein, if supported by the proofs in the cause, would be a decree vesting the title to said lands in said Magwire; and under said laws the right to recover in that suit the possession of the lands therein described, could not be tried, adjudged, or determined, under the said petition and the proceedings thereunder.

"5. This court doth find, adjudge, and decree, that in conformity with the laws of the State of Missouri, the petition of said Magwire is a proceeding for equitable relief only for the purpose of vesting the legal title to the lands therein described (the legal title to which was admitted by plaintiff in his peti-

tion to be then in defendant), in said plaintiff, Magwire, and in ' conformity with said laws the right to recover in said suit the rents, issues, and profits of said lands, cannot be tried, adjudged, or determined, under the said petition and the proceedings thereunder.

"6. It is, *therefore*, considered by the court, and the court doth order, adjudge, and decree that the said

'PETITION BE DISMISSED WITH COSTS."

From this decree *Tyler* now in turn appealed, and the case was here for the third time; having been already twice before the Common Pleas of Missouri, and twice before the Supreme Court of that State.

The new writ of error, following the language of the twenty-fifth section, recited, that in the proceedings before the State court there "was drawn in question the validity of a treaty or statute of, or an authority exercised under the United States, and the decision was against their validity; or was drawn in question, the validity of a statute of, or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision was in favor of such their validity; or was drawn in question, the construction of a clause of the Constitution, or of a treaty, or statute of, or commission held under the United States, and the decision was against the title, right, privilege, or exemption, especially set up or claimed under said clause of the Constitution, treaty, statute, or commission."

*Mr. P. Phillips, with whom was Mr. B. A. Hill, now moved to dismiss the writ for want of jurisdiction:*

This writ properly describes the terms of the twenty-fifth section of the Judiciary Act, and in order to maintain the writ, it must be shown, that the decree complained of draws in question the validity of a treaty, statute, or authority, exercised under the United States; or, that it draws in question, the construction of a clause of the Constitution, or of a treaty, or statute of, or commission held under the United

States.  If this cannot be shown the writ must necessarily be dismissed.  The act of 1789 in conferring this supervisory power carefully defines the cases in which it shall be exercised, and for greater emphasis and to mark the caution with which such a jurisdiction should be exercised, it commands that " no other error shall be assigned or regarded as a ground of reversal, in any such case as aforesaid, than such as appears on the face of the record, and *immediately respects* the before-mentioned questions of validity, or construction of the said Constitution, treaties, statutes, commissions, or authorities, in dispute."

The cases thus defined are brought within the jurisdiction of this court by means of a " writ of error," and the section then declares that this writ " shall have the same effect as if the judgment or decree complained of had been rendered or passed in a Circuit Court."

The " effect " of the writ, relates to its function in removing the cause from the inferior court, and can have no influence upon the question of jurisdiction which had been previously defined.

The section then continues, " the proceeding upon reversal shall also be the same."  This refers to the twenty-fourth section, which provides that this court, on reversal, should render such judgment or decree as the court below should have rendered or passed.  But this was coupled with the limitation, that it should not issue execution, " but should send a special mandate to the Circuit Court to award execution thereupon."

Having thus provided for the proceeding on reversal, the twenty-fifth section declares, that if the cause has once been remanded before, the court, " instead of remanding the cause for a final decision, may, at their discretion, proceed to a final decision of the same and award execution."

The simple inquiry then is, does the decree of the Supreme Court of Missouri, which is now brought before the court, by this second writ, present any one of the Federal questions designated by the twenty-fifth section ?  If it does, then this court has jurisdiction.  If it does not, then the court is

without the power of revision, however erroneous they may consider the decree.    This is the crucial test.

Now, referring to the very words of the decree,* it is plain that all the matters adjudged are relative to State jurisdiction and State practice.

The question adjudicated by this court in Magwire's favor was that he held the *legal title* to the premises in controversy. The State court was directed to proceed in conformity with that decision.    There is nothing in the decree which militates in the slightest degree with the adjudication.    The jurisdiction under the twenty-fifth section was maintainable only on the ground that the *title* of Magwire to the land was derived from the United States.    The court did not and could not have legally passed on the question as to the proper *remedy* for the assertion of the title.    The action was begun by Magwire in the State courts, and he must be governed by the remedy which those courts are authorized to administer.    If it has been instituted in the Circuit Court of the United States the State remedy would control.    From the organization of the Federal judiciary to the present time Congress has regarded the adoption of the forms of proceeding established by the State, in common-law actions, as necessary for the preservation of harmony.

The cases of *Neilson* v. *Lagow*,† and *Carpenter* v. *Williams*,‡ are sufficient to illustrate the limitation affixed to the decision of Federal questions.    In the latter case, Mr. Justice Miller says:

"It is a mistake to suppose that every suit for real estate in which the parties claiming under the Federal government are at issue necessarily raises a question of Federal cognizance.    If this were so, the title to all the vast domain once vested in the United States could be brought from the State courts to this tribunal."

The only two cases that have come under our observation, in which a second writ of error has been issued to a State

---

* Quoted *supra*, 266.      † 12 Howard, 110.      ‡ 9 Wallace, 786. ·

court, are those of *Martin* v. *Hunter's Lessee,** and *Davis* v. *Packard*.†

In the former case, the Supreme Court of Virginia, on the receipt of the mandate, instead of obeying the same, entered up a judgment that the twenty-fifth section of the Judiciary Act was unconstitutional, and " that the proceedings in the Supreme Court were *coram non judice* in relation to this court, and that obedience to its mandate be declined by the court."

The court say :

" This is a final judgment in a suit in a State court denying the validity of a statute of the United States; and unless a distinction can be made between the proceedings under a mandate and proceedings in an original suit, a writ of error is the proper remedy to reverse that judgment. In our opinion no legal distinction exists between the cases."

Here there was no difficulty as to the jurisdiction; the case was plainly within the description of the twenty-fifth section, and if that section was constitutional, as the court decided it. to be, there was nothing left but to enter up a judgment reversing the judgment rendered on the mandate.

The other case, *Davis* v. *Packard*, is so substantially like this as to justify a very particular reference. Packard recovered a judgment against Davis in the Supreme Court of New York. Davis appealed to the Court of Errors, where, for the first time by assignment of error there, he brought out the fact that he was a consul of a foreign government. The Court of Errors affirmed the judgment. On writ of error to this court this judgment was reversed and the cause remanded to said court, with " *directions to conform its judgment to the opinion of this court.*" On the receipt of this mandate, the court adjudged, in conformity with the opinion of this court, that " a consul is, by the Constitution and laws of the United States, exempt from being sued in a State court." But they went further, in declaring that it had no

---

* 1 Wheaton, 304.                † 8 Peters, 312.

jurisdiction to reverse a judgment of the Supreme Court of the State for any error of fact, or for any other error than such as appears on the face of the record of that court. That it, therefore, could not notice the assignment made in their court, setting up the official character of the appellant. That the mode of redress for error in fact was by writ of error, *coram vobis*, returnable to said Supreme Court. That the defendant in error was, therefore, entitled to have a judgment of affirmance; " but as, on filing the mandate of the Supreme Court of the United States, he has moved to dismiss the writ of error to the Supreme Court of the State, it is adjudged that the said writ be dismissed and that, the plaintiff in error be amerced in costs." From this proceeding a second writ of error was sued out from this court, and the allegation was, as in this case, that the mandate had not been complied with.

In the case now before the court the decision was that Magwire held the legal title. The Supreme Court of the State, in obedience to it, held the same. In the case cited, this court decided that a consul was not suable in a State court, and this was announced as the law by the Court of Errors.

In both cases the form of the mandate is the same, to proceed according to the opinion of the court.

In the case before the court the bill is dismissed, because by the laws of Missouri the remedy was at law, and not in equity. In the case cited, the writ of error to the Supreme Court of the State is dismissed, because there was nothing on the record of that court of which the Court of Errors, by the laws of New York, could take jurisdiction.

This last action was reviewed by this court on the second writ of error.

In both cases the State courts were controlled in their action by the State laws defining their jurisdiction.

Marshall, C. J., says:

" It is not admitted that the court whose judgment has been reversed or affirmed can rejudge that reversal or affirmance; but it must be conceded that the court of dernier resort in

every State *decides upon its own jurisdiction* and *upon the jurisdiction of all inferior courts to which its appellate power extends.* Assuming these propositions *as judicial axioms,* we will inquire whether the judgment of the Court of Errors is in violation of the mandate of this court. Neither the judgment nor mandate of this court prescribed in terms the judgment which should be rendered by the Court of Errors. If the jurisdiction of the court for the correction of errors does not, according to the laws of New York, enable that court to notice errors in fact in the proceedings of the Supreme Court, not apparent on the face of the record, it is difficult to perceive how that court could conform its judgment to that of this court otherwise than by quashing its writ of error to the Supreme Court."

These considerations and authorities demonstrate that this court is without jurisdiction, and that the writ of error should be dismissed.

It will be said, perhaps, that the question of jurisdiction in the State court was not made in the first instance, and could not, therefore, be raised for the first time in the Supreme Court of the State. The answer to this is, that *when* and *how* such a plea to the jurisdiction should be made depends on the practice regulating the courts of the State. It is purely a local question, and when decided by the Supreme Court of the State it is conclusively decided. Such a decision raises no Federal question, and is, therefore, beyond the revisory power of this court.

The counsel of the other side, in bringing the writ here, are in fact asking this court " to affirm the decree of the St. Louis Court of Common Pleas;" the exact thing which this court has once declared, after argument, that it was not right for it to do.

*Mr. S. T. Glover, with whom were Messrs. J. M. Carlisle and J. D. McPherson, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Power to re-examine, in a certain class of cases, final judgments and decrees in the highest court of law or equity of a

State, and to reverse or affirm the same upon a writ of error, was conferred upon the Supreme Court by the twenty-fifth section of the Judiciary Act, and the same section provides that the writ of error shall have the same effect as if the judgment or decree had been rendered or passed in the Circuit Court, and that the proceeding upon the reversal shall also be the same, except that the Supreme Court, instead of remanding the cause for a final decision, may, at their discretion, if the cause shall have been once before remanded, proceed to a final decision of the same, and award execution.* Where the reversal is in favor of the original plaintiff, and the damages to be assessed or matters to be decreed are uncertain, the Supreme Court will remand the cause for a final decision, unless the same shall have been once before remanded, in which case the court may, at their discretion, proceed to a final decision of the cause. Execution in that event may be awarded here, but the court, in all other appellate cases, will send a special mandate to the subordinate court for all further necessary proceedings.

Such were the directions of the Judiciary Act, but the Congress, on the 5th of February, 1867, amended that section in several particulars, and provided that the writ of error, in such a case, shall have the same effect as if the judgment or decree had been rendered or passed in a Federal court, and that the proceeding upon the reversal shall also be the same, except that the Supreme Court may, at their discretion, proceed to a final decision of the same and award execution or remand the same to the inferior court.†

Titles to lands claimed by individuals in Louisiana, at the time the province was ceded to the United States, were, in many cases, incomplete, as the governor of the province never possessed the power to issue a patent. All he could do was to issue to a donee an instrument called a concession or order of survey, and as the claimants had never obtained patents from the supreme government it became necessary for a plaintiff, in a suit to recover the land, to prove that his

---

. * 1 Stat. at Large, 86.                    † 14 Id. 387.

claim had been confirmed under some act of Congress.
Complete titles, of which there were a few at the date of the
cession, required no such confirmation, as they were pro-
tected by the third article of the treaty of cession.* It was
stipulated by the treaty that the inhabitants of the ceded
territory should be admitted into the Union as soon as pos-
sible, and that in the meantime they should be maintained
and protected in the free enjoyment of their property. Con-
gress accordingly passed the act of the 2d of March, 1805,
to ascertain and adjust the titles and claims to land in the
ceded territory.† Prior to the passage of that act, however,
the province ceded by the treaty had been organized by
Congress into two Territories, and the fifth section of the act
to ascertain and adjust such titles and claims made provision
for the appointment of commissioners in each of those Terri-
tories to ascertain and adjudicate the rights of persons pre-
senting such claims. Such commissioners were required by
that act to lay their decisions before Congress, but a subse-
quent act provided that the decision of the commissioners
when in favor of the claimant should be final against the
United States.‡

Both parties in this case claim under the same concession,
which was issued by the governor to Joseph Brazeau. On
the 1st of June, 1794, he presented his petition to the gov-
ernor, asking for a tract of land situate in the western part
of the town of St. Louis, beyond the foot of the mound
called La Grange de Terre, of four arpents in width, to ex-
tend from the bank of the Mississippi in the west quarter,
southwest, by about twenty arpents in depth, beginning at
the foot of the hill on which stands the mound and ascend-
ing in a northwest course to the environs of Rocky Branch,
so that the tract shall be bounded on the east side by the
bank of the river, and on the other sides in part by the
public domain, and in part by the lands reunited to that do-

---

* 8 Stat. at Large, 202; United States *v.* Wiggins, 14 Peters, 350.
† 2 Stat. at Large, 326.            ‡ Ib. 283, 327, 353, 391, 440.

main. .Ten days later the governor executed an instrument
in which he declared that the tract belonged to the public
domain, and certified that he had put the petitioner in pos-
session of the same, specifying in a general way the bound-
aries of the tract, and describing it as four arpents front by
twenty arpents in depth.   On the 25th of June, in the same
year, the governor issued a concession to the petitioner, in
which he formally granted to the donee in fee simple, for
him, his heirs or assigns, or whosoever may represent his
rights, a tract of land . . . of four arpents front by twenty
arpents in depth, situate north of the town; . . . to begin
beyond the mound, extending north-northwest to the envi-
rons of Rocky Branch; bounded on one side by the bank
of the river, and on the opposite by lands reunited to the
public domain through which the concession passes, of
which one end is to be bounded by the concession to one
Esther, a free mulatto woman.   Five years before the treaty
of cession, on the 9th of May, the donee, by a deed of that
date, duly executed before the governor, sold, ceded, relin-
quished, and transferred to Louis Labeaume, " a concession
of land to him given," as aforesaid, consisting of four arpents
of land, to be taken from the foot of the hill called La Grange
de Terre, by twenty arpents in depth; bounded by the
Rocky Branch at the extremity opposite the hillock, east by
the river, and west by the land belonging to the royal do-
main, the said Brazeau reserving to himself four arpents of
land to be taken at the foot of the hillock in the southern
part of said land, . . . selling only sixteen arpents in depth
to said Labeaume, who accepts the sale on those terms and
conditions; and the record shows that the instrument was
signed by both parties.   Four by sixteen arpents were vested
in the purchaser by that deed, but he desired to enlarge his
possession and he asked the governor to grant him an ad-
ditional tract of three hundred and sixty arpents, including
the tract he acquired by that conveyance, and the governor,
on the 15th of February following, made the concession
and directed in the same instrument that the surveyor should
make out the survey in continuation of his antecedent pur-

chase, and that he should put the interested party in posses-
sion of the described premises. Pursuant to those directions
the surveyor made the requisite survey, but he included the
whole of the former concession in the certificate, overlook-
ing the undisputed fact that the grantor of the deed reserved
to himself 4 x 4 arpents of the same, " to be taken at the
foot of the hillock in the southern part of said land," which
shows the origin of this long-protracted controversy. Special
consideration was given to that survey in the first opinion
delivered in this case, in which the court decided that such
a survey, however the error may have arisen, cannot have
the effect to enlarge the rights of the purchaser or to dimin-
ish or impair the rights of the donee of the concession, to
the 4 x 4 arpents reserved in the said deed, and which were
never conveyed to the grantee of the residue of the tract.

Enough has been remarked to show that the premises in
controversy are the 4 x 4 arpents reserved in the deed from
Joseph Brazeau to Louis Labeaume, and that the plaintiff
claims title under the former and that the defendants claim
under the latter. Conflicting claims to the premises exist-
ing, the plaintiff, on the 18th of September, 1862, com-
menced the present suit in the land court of the county, but
the suit was subsequently transferred by a change of venue
to the Court of Common Pleas of the same county, the
claim of the plaintiff being for 4 x 4 arpents of land, as de-
scribed in the petition, and which, as alleged in the petition,
was confirmed to the plaintiff by the land commissioners.
Full description of the premises as confirmed to the donee
is given in the petition, as follows : " Beginning at a point
on the right bank of the Mississippi River, the northeast
corner of survey No. 3342, in the name of Esther, a free
mulatress woman, or her legal representatives, and the south-
east corner of Louis Labeaume, survey No. 3333; thence
south 74° 30' west with the southern boundary of the Louis
Labeaume survey and the northern boundary of the Esther
survey, to the northwest corner of the Esther survey; thence
north 23° west 776 feet 8 inches, to a stone; thence 74° 30'
north 776 feet 8 inches, to a point on the right bank of the

Mississippi River; thence down and along the right bank of said river, to the beginning corner."

Having described the premises the plaintiff then proceeded to allege that the tract of land so meted and bounded justly and honestly belongs to him as the claimant under the original donee, and charges that the defendants, on the 26th of February, 1852, procured a survey of the same to be made, under the authority of the United States, for the other claimant, which embraces the described tract, and caused the same to be set apart for such other claimant, and that they afterwards, on the 25th of March, 1852, procured a patent to be issued to that same party upon the said survey; that the said 4 x 4 arpents, as reserved in the deed of the original donee, was, on the 8th of May, 1862, again surveyed by the proper authorities and that the same was laid off in the southeast corner of the survey, with its southern boundary coincident with the northern boundary of the Esther tract, and that said survey was duly approved and that a patent was duly issued for the said 4 x 4 arpents of land to the original donee or his legal representatives; that the survey and patent to the other claimant, so far as they conflict with the survey and patent to the original donee, are a cloud upon the title of the plaintiff, as they are older than the latter, and that the defendants continually assert the validity of the former and the invalidity of the latter; that they have combined and confederated to keep the plaintiff out of the possession of the premises, and that they have received the rents and profits thereof to an amount not less than $25,000; and he prays that he may be protected and established in his just rights, and that the court, by its judgment and decree, will divest out of the defendants all the right, title, and interest acquired or claimed by them from the other claimant, or any one claiming under him, and invest the same in the plaintiff and put him in possession thereof, and that an account may be taken of the rents and profits which have accrued while the defendants were in possession of said premises and that the plaintiff may have judgment therefor; and he also prays for such other relief as may be proper in

the case. Service was made and the defendants appeared and filed an answer, denying pretty nearly every material allegation of the petition. They admitted, however, that the governor made the concession of the 4 x 20 arpents to Joseph Brazeau, and they set up as the source of their title the deed of the 4 x 16 arpents, deducting the reservation from the original donee to the other claimant.

Such an instrument granted only an incomplete title, as the governor never possessed the power to issue a patent. Consequently the legal title to the land vested, under the treaty of cession, in the United States, as the successor of the former sovereign, and the court decided, in the prior opinion in this case,* that a donee of an incomplete title, in the territory ceded by the treaty, could not convert such a title, as derived from the former sovereign, into a complete title under the United States in any other mode than that prescribed by an act of Congress. Such being the law it became necessary for the respective parties to prove that their respective claims had been confirmed, and they accordingly introduced in evidence the proceedings in respect to the concession in controversy before the board of commissioners for the adjudication of such claims. Most or all of those documents are material in this investigation, but inasmuch as they will all be found in the former opinion of the court in this case, they will not be reproduced. All of those documents were examined by the court in the prior opinion given in the case, and the court decided that the effect of the proceedings was to correct the error committed by the surveyor of the former government and place the rights of the litigants upon their true basis. Proceedings of various kinds in respect to the tract also took place, under the direction of officers in the land department, subsequent to the treaty of cession, but it will be sufficient to remark upon that subject that the history of those proceedings is fully given in the former opinion, and that the proceedings resulted in the survey and the patent to the original donee

---

* Magwire *v.* Tyler, 8 Wallace, 658-661.

or his legal representatives, under which the plaintiff now claims. None of the proceedings are referred to with any other view than to enable the parties to understand the propositions of law and fact which were decided by the court in the former opinion, as it is not proposed to re-examine any of those questions.

Apart from the matters already mentioned the court also decided that the incomplete title to the whole tract of 4 x 20 arpents was granted by the governor to the claimant mentioned in the concession evidencing the grant; that the deed from the donee of the tract to the other claimant did not convey the 4 x 4 arpents now in controversy, but that the title to the same, as acquired by the concession, still re-mained in the donee of the tract, by virtue of the reservation contained in the deed; that the survey made by the surveyor under the former sovereign did not have the effect to impair the incomplete title of the donee nor to convey, assign, or transfer any interest whatever in the tract of 4 x 4 arpents to the grantee in that deed; that the tract of 4 x 4 arpents was confirmed to the original donee by the decree of the commissioners, of September 22d, 1810, and that the same was never confirmed to the other claimant; that the other claimant did not acquire the legal title to the tract of 4 x 4 arpents under the patent granted to him, as the saving clause in the same reserved any valid adverse right which existed to any part of the tract; that the patent granted to the original donee at the same time never became operative, as he refused to accept the same, and it was returned to the land department; that the subsequent action of the secre-tary in cancelling the same and in ordering a new survey was authorized by law; that the original donee, by virtue of that survey and the patent granted to him, acquired the legal title to the tract of 4 x 4 arpents, as he was the rightful owner of the incomplete title; that the land reserved is bounded on the south by the concession to the mulatto woman and north by the south line of the "sixteen arpents in depth" conveyed by the deed, and lies north of the ditch; that the legal title to the tract of 4 x 4 arpents remained in

the United States until the 10th of June, 1862, when the patent was granted to the donee of the incomplete title under the former sovereign; that the title of the donee before he obtained the patent was incomplete and attached to no particular parcel of land, and consequently the respective defences of the statute of limitations and of a former recovery were inapplicable to the case, as the legal title was in the United States as derived by the treaty of cession.*

Lastly, the answer set up the defence of innocent purchasers, but the court decided that the record furnished no evidence to support the defence, or to show that the decision of the State court turned upon any such ground, and that the conclusion, in view of those facts, must be, that no such question was decided, as this court will not presume that the court below decided erroneously in order to defeat their own jurisdiction.†

Having overruled all of those special defences the court proceeded to say, in the first opinion, that the incomplete title to the tract remained unextinguished in the original donee or his assigns throughout the whole period of the litigation; that he never sold the 4 x 4 arpents to the other claimant, nor did he ever request that it should be surveyed or located in any other place than the one where it was, by the first survey, ascertained to be; that the other claimant never had any concession of the tract, that he never purchased it and never had any title of any kind to any part of the concession, except the sixteen arpents as described in his deed from the rightful owner of the residue of the tract.

Viewed in the light of these several suggestions, as the case must be, it is plain and undeniable that this court, in the former opinions delivered in the case, disposed of every material question at issue in the record between the parties, and decided "that the said tract of land so meted and

---

* United States v. King et al., 3 Howard, 786; Same v. Forbes, 15 Peters, 173; Landes v. Brant, 10 Howard, 370; West v. Cochran, 17 Id. 414; Stanford v. Taylor, 18 Id. 412; Bissell v. Penrose, 8 Id. 334.

† Neilson v. Lagow et al , 12 Howard, 110; Magwire v. Tyler et al., 40 Missouri, 433; Magwire v. Tyler et al., 1 Black, 199.

bounded justly and honestly belongs to the plaintiff," as alleged in the petition.

Removed here, as the cause then was, by writ of error to the Supreme Court of the State, it becomes necessary to advert briefly to the proceedings in the State courts.

By the bill of exceptions it appears that the issues of law and fact were heard by the judge of the Court of Common Pleas, trying the cause without a jury, and the bill of exceptions states, at its commencement, that " the following are all the proceedings, evidence, and testimony offered, given, and had before the court." Then follows what purports to be all the proceedings, evidence, and testimony; and the bill of exceptions also states, at its conclusion, that the foregoing is all the evidence, testimony, and proceedings in the cause on the trial thereof before the court, and all, every, and each of said deeds, documents, papers, plats, and depositions, testimony, evidence, records, patents, and all other instruments of writing set forth and copied in the foregoing bill of exceptions, and that the same were duly read in evidence on the trial of this cause, and that the said cause was thereupon submitted to the court for decision and decree. It also appears by the decree that the cause was submitted for decision upon the petition and answers of all the defendants, and the exhibits and other evidence in the cause, and that " the court finds that, out of the claim presented to the board of commissioners by Labeaume, the tract of 4 x 4 arpents claimed by the plaintiffs was confirmed to Joseph Brazeau, or his legal representatives; and that the court also found the issues in this cause in favor of the plaintiff, and therefore it was ordered, adjudged, and decreed that the tract of land, meted and bounded as follows," describing it as before stated, " be and the same is hereby decreed to the plaintiff, and that all the right, title, and interest of each and every one of said defendants in and to said tract of land, is hereby divested out of them and vested in and passed to the plaintiff, to have and to hold to the plaintiff, his heirs and assigns, the said tract of land so passed to the plaintiff, his heirs and assigns forever, the same being the tract covered by the

survey No. 3343, approved May 8th, 1862, and patented to Joseph Brazeau or his legal representative, the 10th of June in the same year." Rents and profits were also decreed to the plaintiff, and the cause was sent to a master to report the amount. Two motions for new trial were filed by the defendants, but they were both denied, and the court having amended and confirmed the report of the master, entered a final decree for the plaintiff, and the defendants having filed a bill of exceptions, as before explained, appealed to the Supreme Court of the State. Hearing was had in the Supreme Court upon the exhibits, proofs, evidence, and testimony set forth in the bills of exceptions, and the Supreme Court reversed the decree of the Court of Common Pleas and dismissed the petition. Whereupon the plaintiff sued out a writ of error and removed the cause into this court, and this court reversed the decree of the Supreme Court of the State, and by the order, as amended, remanded the cause for further proceedings in conformity to the opinion of the court.* Pursuant to the mandate of this court remanding the cause, the Supreme Court of the State reversed their former decree reversing the judgment and decree of the Court of Common Pleas and dismissing the petition, but they did not proceed and dispose of the case in conformity to the opinion of this court, as directed in the mandate.

By the directions of the mandate they were as much bound to proceed and dispose of the case in conformity to the opinion of this court as to reverse their former decree, but instead of that they entered a new decree dismissing the petition, which in effect evades the directions given by this court, and practically reverses the judgment and decree which the mandate directed them to execute. Argument to show that a subordinate court is bound to proceed in such an event and dispose of the case as directed, and that they have no power either to evade or reverse the judgment of this court, is unnecessary, as any other rule would operate

---

* Magwire v. Tyler, 8 Wallace, 672.

as a repeal of the Constitution and the laws of Congress passed to carry the judicial power conferred by the Constitution into effect.

Beyond all question this court decided every question at issue between the parties which it was necessary to decide to dispose of the case upon the merits, and it is clear that it is not competent even for this court, after the term expired, to review and reverse such a decree. Repeated decisions of this court have established the rule that a final judgment or decree of this court is conclusive upon the parties, and that it cannot be re-examined at a subsequent term, except in cases of fraud, as there is no act of Congress which confers any such authority. Second appeals or writs of error are allowed, but the rule is universal that they bring up only the proceedings subsequent to the mandate, and do not authorize an inquiry into the merits of the original judgment or decree. Rehearings are never granted where a final decree has been entered and the mandate sent down, unless the application is made at the same term, except in cases of fraud. Appellate power is exercised over the proceedings of subordinate courts, and not over the judgments or decrees of the appellate court, and the express decision of this court in several cases is that "the court has no power to review its decisions, whether in a case at law or in equity, and that a final decree in equity is as conclusive as a judgment at law," which is all that need be said upon the subject.* On receipt of the mandate it is the duty of the subordinate court to carry it into execution even though the jurisdiction do not appear in the pleadings.†

Deprived of the fruits of the decree of this court, as ordered in the mandate, the plaintiff sued out a second writ

---

* Washington Bridge Co. v. Stewart et al., 3 Howard, 424; Ex parte Sibbald, 12 Peters, 492; Peck v. Sanderson, 18 Howard, 42; Leese v. Clark, 20 California, 417; Hudson v. Guestier, 7 Cranch, 1; Browder v. McArthur, 7 Wheaton, 58.

† Skillern's Executors v. May's Executors, 6 Cranch, 267; Livingston v. Story, 12 Peters, 339; Chaires et al. v. United States, 3 Howard, 618; Whyte v. Gibbes, 20 Id. 542; Sibbald v. United States, 2 Id. 455.

of error, and removed the cause a second time into this court.

Brought here as the cause is by a second writ of error, it is settled law in this court that nothing is brought up for re-examination and revision except the proceedings of the subordinate court subsequent to the mandate.* It has been settled, says Mr. Justice Grier, by the decisions of this court, that after a case has been brought here and decided and a mandate issued to the court below, if a second writ of error is sued out it brings up for revision nothing but the proceedings subsequent to the mandate. None of the questions which were before the court on the first writ of error can be reheard or examined upon the second, as it would lead to endless litigation.†

Different theories are put forth as to the ground assumed by the Supreme Court of the State in refusing to proceed with the case as directed in the mandate, and in entering the decree dismissing the petition, but the explanations given in the order of the court show that the court decided that the petition was a proceeding to obtain equitable relief in respect to the lands therein described, and that the legal title to the premises cannot be tried and adjudged under such a petition, and that inasmuch as the plaintiff had a plain, adequate, and complete remedy at law, the suit could not be maintained.

Presented as the proposition was as a reason for not executing the mandate of this court, the question as to its sufficiency is one which must necessarily be determined by this court, else the jurisdiction of the court will always be dependent upon the decision of the State court, which cannot be admitted in any case.

State courts have no power to deny the jurisdiction of this court in a case brought here for decision and sent back with the mandate of the court, which is its judgment. Such a question, that is, the question whether the legal title was

* Roberts v. Cooper, 20 Howard, 467.

† Sizer v. Many, 16 Howard, 98; Corning v. Iron Co., 15 Id. 466; Himely v. Rose, 5 Cranch, 315; Martin v. Hunter, 1 Wheaton, 355.

in the plaintiff, and whether or not he had a plain, adequate, and complete remedy at law, might have been raised in the court of original jurisdiction, and perhaps it might have been raised here when the case was before the court upon the first writ of error, but it is clear that it was too late to raise any such question after the whole case had been decided and the cause remanded for final judgment.*  Confirmation of that proposition of the most decisive character is found in the statute law of the State.  Prior to the commencement of this suit the legislature of the State abolished all forms of pleading based on the distinction between law and equity, and enacted that "there shall be in this State *but one form of action* for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be denominated a civil action."†

Suits may be instituted in courts of record by filing in the office of the clerk of the proper court a petition setting forth the plaintiff's cause of or causes of action and the remedy sought.‡

Section three of article six enacts that the first pleading on the part of the plaintiff is the petition, which shall contain: (1.) The title of the cause, specifying the name of the court and county in which the action is brought, and the names of the parties to the action.  (2.) A plain and concise statement of the facts constituting a cause of action, without unnecessary repetition.  (3.) A demand of the relief to which the plaintiff may suppose himself entitled.§

Corresponding regulations are also enacted in the next section in relation to defences, which provides that the only pleading on the part of the defendant is either a demurrer or an answer; and the forty-eighth section provides that every material allegation in the petition not specifically controverted in the answer, and every material allegation in the answer of new matter, constituting a counter claim, not

---

* Hipp *v.* Babin, 19 Howard, 278; Parker *v.* Woollen Co., 2 Black, 551. Noonan *v.* Bradley, 12 Wallace, 129.

† 2 Revised Statutes, 1216.　　　‡ Ib. 1222.　　　§ Ib. 1229.

specifically controverted in the reply, shall, for the purposes of the action, be taken as true.*

By the same statute it is enacted that the defendant may demur to the petition when it shall appear upon the face thereof, either—(1.) That the court has no jurisdiction of the person of the defendant *or the subject-matter of the action.* (2.) That the plaintiff has not legal capacity to sue. (3.) That there is another action pending between the same parties for the same cause of action in the State. (4.) That there is a defect of parties plaintiff or defendant. (5.) That several causes of action have been improperly united. (6.) That the petition does not state facts sufficient to constitute a cause of action. (7.) That a party, plaintiff or defendant, is not a necessary party to a complete determination of the action.†

No other grounds of demurrer are allowed by the statutory rules of pleading. Those rules demand only a cause of action, but it need not be designated as legal or equitable, as a demurrer for want of form is not allowed; nor is the jurisdiction of the court, in any way, affected by forms.

Such objections as those enumerated in the sixth section, if they do not appear on the face of the petition, may be taken by answer, and the tenth section expressly enacts that " if no such objection be taken, *either by demurrer or answer,* the defendant shall be deemed *to have waived the same,*" excepting only the objection to the jurisdiction of the court over the subject-matter of the action, and excepting the objection that the petition does not state facts sufficient to constitute a cause of action.

It is not denied, nor can it be, that the plaintiff stated a good cause of action in his petition, and it is equally clear that he proved it, and that he prayed for the very relief he is entitled to receive; and as the law of the State allows of but one form of action for the enforcement or protection of private rights, the court is of the opinion that the objection under consideration is entirely without merit, as such an

---

* 2 Revised Statutes, 1230–1238.  † Ib. 1231.

objection is not a valid·one under the statutory rules of pleading prescribed in that State.

Suppose the general rule, however, to be otherwise, still the court is of the opinion that the objection, even if it had been made earlier, could not.avail the defendants, as they did not make it *by demurrer or in the answer*, as the express provision of the statute is that unless it is made by demurrer or answer " the defendant shall be deemed to have waived the same."

Justice requires that that rule shall be applied in this case, as the case has been pending more than ten years, having been twice heard in the Common Pleas, once in the Supreme Court of the State, twice before the present hearing, including the hearing on the motion, in this court, and a second time in the Supreme Court of the State, and is now here on a second writ of error after this court has decided that the plaintiff has a complete, perfect, and unqualified right, under the patent granted to the original donee or his legal representatives.

Unless the rule suggested is applicable in this case it is difficult to imagine a case where it would be, as the petition presents every fact constituting the cause of action, and it cannot be denied that the relief prayed is appropriate to the cause of action alleged, and the practice in such a case is, under the system of pleading adopted in that State, that the court will give the relief, no matter whether it be legal or equitable, if the facts alleged are fully proved, as the rule is that if the facts stated in the petition give a right of action the plaintiff ought to recover.*   Where a cause is tried by a court without a jury, the Supreme Court of the State will affirm the judgment if the facts found support the judgment.†   Under the code the plaintiff is entitled to all the relief that would formerly have been afforded him both by a court of law and equity.‡   If the defendant has answered,

---

* Scott *v.* Pilkington, 15 Abbott's Practice Reports, 285.

  † Robinson *v.* Rice, 20 Missouri, 236; Butterworth *v.* O'Brien, 24 Howard's Practice Reports, 438.

  ‡ Rankin *v.* Charless, 19 Missouri, 493; Winterson *v.* Railroad Co., 2 Hilton, 392; Patrick *v.* Abeles, 27 Missouri, 185.

the court may.grant the plaintiff any relief, under the code, consistent with the case made by the complaint and embraced within the issue.* So, where the facts are sufficiently stated in the petition, the Supreme Court of the State hold that the plaintiff may have such judgment as the facts stated will give him, although he may have asked for a different relief in the prayer of his petition.† Exactly the same rule is laid down in numerous adjudications in other States, and those of very high respectability, showing that such is the general rule in many jurisdictions, and it is believed that no case can be found where a different rule has ever been adopted in a case finally determined in the Supreme Court of Errors, and remanded to the subordinate court under a mandate directing the subordinate court to execute the decree of the appellate tribunal. Where a defendant put in his answer, instead of a demurrer, and the cause came to be heard on the merits, Chancellor Kent held that it was too late to object to the jurisdiction of the court on the ground that the plaintiff might have pursued his remedy at law.‡ After a defendant has put in an answer to a bill in chancery, submitting himself to the jurisdiction of the court, it is too late, says Chancellor Walworth, to insist that the complainant has a perfect remedy at law, unless the court is wholly incompetent to grant the relief sought by the bill.§

Such a defence was never made in the case until the first opinion of the court heretofore delivered in the case was read in court and published. In that opinion the court decided that Labeaume did not acquire the legal title to the tract of 4 x 4 arpents, under the patent granted to him, as

---

* Marquat v. Marquat, 12 New York, 341.

† Miltenberger v. Morrison, 39 Missouri, 78; Meyers v. Field, 37 Id. 434.

‡ Underhill v. Van Courtlandt, 2 Johnson's Chancery, 369; Livingston v. Livingston, 4 Id. 290.

§ Grandin v. Le Roy, 2 Paige, 509; Hawley v. Cramer, 4 Cowen, 727; Ludlow v. Simond, 2 Caines's Cases, 56; Le Roy v. Platt, 4 Paige, 81; Davis v. Roberts, 1 Smedes & Marshall's Chancery, 550; Osgood v. Brown et al., 1 Freeman's Chancery, 400; May v. Goodwin, 27 Georgia, 353; Burroughs v. McNeill, 2 Devereux & Battle's Equity, 300; Rathbone v. Warren, 10 Johnson, 595.

the saving clause in the patent reserved any valid adverse right which may exist to any part of the tract; that the patent granted to Joseph Brazeau at the same time never became operative, as he refused to accept the same, and returned it to the land department; that the subsequent action of the Secretary of the Interior in cancelling the same, and in ordering a new survey, was authorized by law; that Joseph Brazeau, by virtue of that survey, and the patent granted to him June 10th, 1862 acquired the legal title to the tract of 4 x 4 arpents, notwithstanding the saving clause in the patent, as he was the rightful owner of the incomplete title to the same, as acquired by the concession granted under the former sovereign. Directed, as the court below was, to proceed in conformity to the opinion of the court, it is quite clear that it was their duty to reverse their judgment and to grant to the plaintiff the relief prayed in his petition, that is, to enter a decree divesting out of the defendants all the right, title, and interest acquired or claimed by them and each of them from the other claimant, or any one claiming under him, and invest the same in the plaintiff, and to put him in possession of the premises.

Such being the conclusion of the court, it only remains to decide what disposition shall be made of the case. Having been once before remanded and the cause being here upon a second writ of error, the court, under the Judiciary Act, may at their discretion remand the same a second time or " proceed to a final decision of the same and award execution."* Somewhat different rules are enacted in the second section of the act of the 5th of February, 1867, which justify the conclusion that the court in such a case, under that regulation, may at their discretion, though the cause has not before been remanded, proceed to a final decision of the same and award execution, or remand the same to the subordinate court.† Much discussion of those provisions is unnecessary, as it is clear that the court, under either, possesses the power to remand the cause or to proceed to a final decision. Judg-

---

* 1 Stat. at Large, 86.                    † 14 Id. 387.

ing from the proceedings of the State court under the former
mandate, and the reasons assigned by the court for their
judicial action in the case, it seems to be quite clear that it
would be useless to remand the cause a second time, as the
court has virtually decided that they cannot, in their view
of the law, carry into effect the directions of this court as
given in the mandate. Such being the fact, the duty of this
court is plain and not without an established precedent.*
In causes remanded to the Circuit Courts, if the mandate be
not correctly executed, a writ of error or appeal, says Mr.
Justice Story, has always been supposed to be a proper
remedy, and has been recognized as such in the former de-
cisions of this court. Writs of error from the judgments of
State courts have the same effect as writs of error from the
Circuit Courts, and the act of Congress in its terms provides
for proceedings where the same cause may be a second time
brought up on a writ of error to this court. It was con-
tended in that case that the former judgment of this court
was rendered in a case not within the jurisdiction of the
court, to which the learned justice, as the organ of the court,
gave several answers. In the first place, he said, " it is not
admitted that, upon this writ of error, the former record is
before" the court, as the error now assigned is not in the
former proceedings, but in the judgment rendered upon the
mandate issued after the former judgment. He also pro-
ceeds to show that a second writ of error does not draw in
question the propriety of the first judgment, adding that it
is difficult to perceive how such a proceeding could be sus-
tained upon principle, and that it had been solemnly held in
several cases that a final judgment of this court is conclusive
upon the parties and cannot be re-examined. Suffice it to
say the rule is there settled, that where the cause has once
before been remanded and the State court declines or refuses
to carry into effect the mandate of the Supreme Court, the
court will proceed to a final decision of the same and award
execution to the prevailing party; nor is that a solitary ex-

---

* Martin *v.* Hunter, 1 Wheaton, 354.

ample, as the decree in Gibbons *v.* Ogden,* was also entered in this court.

It follows that that part of the decree of the Supreme Court of the State dismissing the petition must be reversed, with costs, and that a decree be entered in this court for the plaintiff, that the tract of 4 x 4 arpents claimed by the plaintiff was confirmed by the commissioners to Joseph Brazeau, and that the final survey, and the patent of June 10th, 1862, issued to him or his legal representatives, gave him a complete title to the tract, and that the same tract, as meted and bounded in the petition, be decreed to the plaintiff, and that all the right, title, and interest of each and every one of said defendants in and to said tract of land, be divested out of said defendants and be vested in and passed to the plaintiff, to have and to hold to the said plaintiff, his heirs and assigns, forever.

Apart from that, a claim is also made by the plaintiff for the rents and profits, and the record shows that the cause in the court where the original decree was entered was referred to a master to ascertain the amount, and that the master made a report which was confirmed by the court, but the decree of that court was reversed in the Supreme Court of the State, which would make it necessary that a new estimation of the rents and profits should be made before the claim can become the proper subject of a decree. Some reference was made to the subject in the argument, but it was by no means fully discussed. Years have elapsed since the hearing was had before the master, and in the meantime many changes no doubt may have taken place in respect to the occupation of the premises, and many of the occupants of the different portions of the tract may have deceased; great changes may also have taken place in the value of the property and in the state and condition of the improvements, which plainly renders it impracticable to do justice between the parties without a new reference, which is a matter of jurisdiction that this court is not inclined to exercise except

* 9 Wheaton, 239.

when it becomes absolutely necessary to prevent injustice. Evidently such a claim must depend very largely upon the statutory provisions of the State, and to those the court have not been referred. Unless the statutes present some insuperable difficulties in the way of such a recovery, no doubt is entertained that the plaintiff will be entitled to enforce that claim in such form of remedy as is allowed by the local law.· Whoever takes and holds possession of land to which another has a better title is in general liable to the true owner for all the rents and profits which he .has received, whether the owner recover the possession of the premises in an action at law or in a suit in equity.*· Depending, as such a claim necessarily must, very much upon the statutes of the State, the court, on the authority of the case of *Miles v. Caldwell,*† as well as for the other reasons suggested, deems it proper to leave the party to prosecute the claim as he may be advised in the tribunals of original jurisdiction, as better suited to investigate and adjudicate such a claim than a court of errors. Besides the relief already described, the decree will also direct that the plaintiff be put in possession of the premises, and for that purpose he will be entitled to a writ of possession to be issued by the clerk of this court.

DECREE REVERSED, and the following

### DECREE ENTERED.

The cause having heretofore been argued by the counsel of the respective parties, and submitted to the court for a decision upon the plaintiff's petition and the answer of the defendants, and the proofs, exhibits, documents; stipulations, and other evidence in the cause, as appears by the authenticated transcript of the record annexed to and returned with the writ of error, and mature consideration having been had thereon, it is—

ORDERED, ADJUDGED, AND DECREED, that so much of the decree

* Green *v.* Biddle, 8 Wheaton, 70; Chirac *v.* Reinicker, 11 Id. 296; Same Case, 2 Peters, 617.

† 2 Wallace, 44.

of the Supreme Court of the State as dismissed the petition of the plaintiff be, and the same is hereby, reversed with costs. And it is further ordered, adjudged, and decreed, that the tract of 4 x 4 arpents claimed by the plaintiff was confirmed by the board of commissioners to Joseph Brazeau or his legal representatives, and that the said tract of land as meted and bounded, justly and equitably belongs to the plaintiff, as alleged in his petition, and as shown by the survey of the 8th of May, 1862, and by the patent of the 10th of June following, duly executed and signed by the President.

Wherefore, this court proceeding to render such decree in the case as the Supreme Court of the State should have rendered, it is ORDERED, ADJUDGED, AND DECREED, that the said tract of land, being the said 4 x 4 arpents claimed by the plaintiff, and meted and bounded as follows, viz.: Beginning at a point on the right bank of the Mississippi River, the northeast corner of survey No. 3342, in the name of Esther, a free mulatress, or her legal representatives, and the southeast corner of Louis Labeaume's survey, No. 3333; thence south 74 degrees 30 minutes west, with the southern boundary of said Labeaume's survey, and the northern boundary of the said Esther survey, to the northwest corner of the said Esther survey; thence north 23 degrees west, 776 feet 8 inches, to a stone; thence north 74 degrees 30 minutes east, 776 feet 8 inches, to a point on the right bank of the Mississippi River; thence down and along the right bank of said river to the beginning; be and the same is hereby decreed to the plaintiff, and all the right, title, and interest of each and every one of said defendants, in and to said tract of land, is hereby divested out of said defendants, and each of them, and that the same is vested in and by virtue of the patent passed to the plaintiff; to have and to hold to the said plaintiff, his heirs and assigns, the said tract of land so passed to him and his heirs and assigns forever, being the same which is covered by the survey No. 3343, approved May 8th, 1862, and patented to Joseph Brazeau, 10th June, in the same year, as appears by the record.

AND IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that the plaintiff recover the possession of the said tract of land as herein meted and bounded, and that a writ of possession issue for that purpose in the usual form, directed to the marshal of this court, duly executed by the clerk, and under the seal of this court.

Statement of the case.

Mr. Justice SWAYNE, Mr. Justice STRONG, and Mr. Justice BRADLEY, dissented.

Mr. Justice HUNT did not hear the argument, and took no part in the judgment.