## JOHN SPRAGUE *versus* DARIUS WAITE.

In pursuance of a petition for a new highway from Malden to Reading, a highway was laid out extending over a portion of the route of the old highway from Salem to Medford. It was *held*, that this did not operate as a discontinuance of the old highway, over any land not embraced within the lines of the new highway; and consequently that the owners of such land were not authorized to bring forward their fences to such lines.

Where a highway is established by user merely, over a tract of land of the usual width of a highway, the right of the public is not limited to the travelled path ; but such user is evidence of a right in the public to use the whole tract as a highway, by widening the travelled path or otherwise, as the increased travel and the exigencies of the public may require.

The *St.* 1786, *c.* 67, § 7, provides, that where fences have been erected " fronting upon or against " any highway, of which the breadth or quantity is not known or can be made certain by the records, or by any other boundaries, and such fences have been maintained for more than forty years, they shall be deemed the true ancient boundaries thereof. Under this statute it was *held*, that a fence placed more or less near a highway was only *primâ facie* evidence of the boundary of such highway, it being for the jury in every such case to determine from the nature and value of the soil, the nearness or distance of the fence from the highway, and from all the other circumstances, whether it was a fence " fronting upon or against " the highway, within the meaning of the statute.

The erection of a pound by a town on a public highway, is an encroachment on the public easement, but does not destroy it.

Sprague
*v.*
Waite.

Where the travelled path upon a public highway which had been established· by use·
merely, separated into two tracks, thus leaving a triangular strip in the middle
over which the travel had never passed, partly on account of a declivity, and partly
on account of some obstructions which had been placed there, it was *held,* that it
was a question of fact to be determined by the circumstances, whether such land
had been appropriated to public use as a highway, although not actually pre-
pared for travel at the time when the highway was first used ; and that the owner
of the soil would have the benefit of the rule, that his private right was not to be
incumbered by the public, unless it was shown satisfactorily, that it had been ap-
propriated to public use.

TRESPASS *quare clausum.* The declaration set forth, that
the defendant depastured and tore up the soil of the plaintiff's
close, situated in Malden, and pulled down a shed standing
thereon.

The defendant pleaded four special pleas. In the first of
them it was alleged, that the place where the trespasses were
supposed to have been committed was, and from time imme-
morial had been, a part of a public highway leading from Sa-
lem through Malden to Medford ; that the highway was out of
repair, straitened and rendered impassable by reason of cer-
tain obstructions placed there by the plaintiff; that the de-
fendant, as one of the surveyors of highways of Malden, en-
tered upon the close for the purpose of repairing the highway
and removing such obstructions ; and that this was the act
complained of in the declaration. The other pleas alleged
substantially the same facts, with the exception that in the
fourth it was set out, that the defendant, being a citizen, and
having occasion to pass that way, removed such obstructions
to enable himself to pass, and that this was the trespass com-
plained of by the plaintiff.

To these pleas the plaintiff replied, that the *locus* was not
part or parcel of a common highway ; and concluded to the
country.

The trial was before *Morton* J.

It appeared that the *locus* was bounded easterly on the road
leading from Boston to South Reading, and southerly on the
road leading from Salem through Medford to Boston. Both
of these roads were ancient highways, used as such from time
immemorial, and no record of their origin was known to exist.
They are in general about three rods wide. The westerly
bound of the *locus* was on a brook running across the Medford

road a few rods from its junction with the South Reading road. A bridge had existed over the brook on the Medford road near to its southerly line, time out of mind.

It was proved by aged witnesses, some of whom remembered the road at this place for more than sixty years, that ever since their remembrance a wall had extended from some point on the South Reading road, passing around the circular corner where the *locus* was situated, on the northerly side of the Medford road, as far as the brook.

At the point where the Medford road crossed the South Reading road, the travel had passed near the wall at the corner, but, in proceeding on toward Medford, a part of it passed through the brook, which was used as a watering-place, and a part took a more easterly direction, and passed over the bridge erected across the brook, thus forming two beaten tracks. At the junction of the roads the distance from the commencement of the old wall on the north to the southerly side of the Medford road, where it turns to go over the bridge, was nine rods.

The wall was situated chiefly on a declivity of land near the brook. Above the wall the land was cultivated ; but below, it was not in a cultivable state, although it did not appear that there was originally any difference in the nature of the soil. A portion of the land on the southerly side of the wall was a wet and muddy place commonly covered with water, and producing nothing but hassocks and yellow lilies. This land outside of the wall was originally of little value, but had now become valuable for building lots.

In 1802 or 1803, the town built a pound on the place, about twenty-two feet square, the southeast corner of which extended a few feet into the old travelled path. The place on which it was built being muddy, it was filled with gravel, excepting one corner, which was left as a watering-place for the impounded cattle. The pound had been suffered to fall into decay.

Within a few years the bridge over the brook had been made much wider, and the fence opposite to the bridge, in the brook, had been brought close up to it, so as to shut out the travel through the brook altogether. It had not been repaired as a highway since the American revolution.

A part of the land in controversy consisted of a triangular strip of land embraced between the former travelled tracks from Boston to Medford, from Salem to Medford, and from Boston to South Reading. Near the centre of this triangular strip, was a steep place or bluff, over which no teams or carriages had ever passed, partly on account of the declivity, and partly because, of late years, stones and other obstructions had been placed there. The place over which no travel had ever passed was two or three rods in length.

About three years since the plaintiff removed the ancient wall and the ruins of the pound, and erected a fence several rods to the south of the place where the old wall stood, extending over the former beaten track of the Medford road. The town of Malden considered this as an encroachment on the highway, and chose a committee with directions to remove the obstructions in the highway at this place. The defendant, being one of the surveyors of highways, and acting under the orders of the committee, removed the fence and other obstructions placed there by the plaintiff. This was the trespass complained of in this action.

The plaintiff, and those who had owned the land on the northerly side of the Medford road, had made no use of the land on the southerly side of the ancient wall; and there was no proof, that they had ever claimed to own it till about the time of the alleged trespass, or that they had ever claimed or contended that the wall was not the line of the road.

The plaintiff contended, that in the town records the land in question was called " common " or " town land."

The plaintiff further contended, that if the existence of the road had been proved, it was only a way by usage, and extended only so far as it was actually travelled ; and that it could not embrace the place where the old pound stood, or where no travel ever could have been.

The jury were instructed, that as the defendant had pleaded, that the place in question was a part of the highway, and issue had been joined on such plea, the burden of proof was on him ; that by the *St.* 1786, *c.* 67, § 7, it was provided, that a building or fence erected fronting upon or against a highway, is to be deemed and taken to be the true ancient boundary there-

of, provided such building or fence has been continued for more than forty years, and where no other boundaries, by record or otherwise, are known or can be made certain ; but that although, in the absence of all other evidence, a fence thus placed was presumed to be the boundary of the highway, yet it was *primâ facie* evidence only, and might be rebutted by other evidence ; that the jury were to judge whether in this case any such evidence, or sufficient evidence, had been produced by the plaintiff to rebut the presumption, that the ancient wall was in fact the true line or boundary in that place ; that in a highway there are often two travelled tracks with a space between them which is taken as a part of the highway ; and that on such principle the jury might consider the bluff as a part of the highway.

The jury returned a verdict for the defendant.

The plaintiff moved for a new trial for the following reasons :

1. That considering the character of the ground and its trifling value in ancient times, the existence of the old wall was not *primâ facie* evidence of a dedication of the land without it, to the public ; and that the jury should have been instructed, that it was rather evidence that the wall was built as far out as the land was worth cultivating.

2. That there were in fact two distinct travelled roads ; and that the case should not have been stated to the jury as analogous to the case of two travelled tracks with a space between them in the same road.

3. The plaintiff also moved for a new trial on the ground of newly discovered evidence, and supported his motion by affidavit.

It appeared by a record of the Court of Common Pleas, laying out a highway from Malden to Stoneham in 1811, that in 1809 a petition was presented praying for a new highway from a small elm tree near the late dwellinghouse of Charles Hill, in Malden, through Stoneham to South Reading. This elm tree was near the centre of the village of Malden, on the easterly side of the principal street running northerly and southerly, and near the place where the Medford and South Reading road intersect each other, and where the old highways varied

considerably in breadth, measuring from the line of the build ings and fences on one side, to those on the other. Upon the petition mentioned, it appeared, that after various proceedings in court, the way prayed for was adjudged to be of common convenience and necessity, and a committee was appointed to lay it out. The committee accordingly laid out a highway beginning at the elm tree, and thence, in a northerly course described, fourteen rods. Opposite the place in question, the highway was laid out three rods in width, extending westerly from the old wall on the easterly side of the ancient road, which was there more than three rods in width.

The plaintiff contended, that this rendered the width of the road from the wall on its easterly side certain, if before it was uncertain, and proved that the place in dispute could not have been a part of the highway.

*Jan. 22d, 1836.*

*Hoar, Choate* and *Peabody*, for the plaintiffs, to the point, that if the strip of land lying between the two travelled tracks was not the unincumbered land of the plaintiff, it was a *common* belonging to the town, and not a *highway*, cited *Gloucester* v. *Beach*, 2 Pick. 60, note ; *Emerson* v. *Wiley*, 7 Pick. 68 ; *S. C.* 10 Pick. 310 ; *Odiorne* v. *Wade*, 5 Pick. 421 ; to the point, that as to a right acquired by the public by user, there was a distinction between a watering-place and a highway, *Commonwealth* v. *Manning*, 1 Dane's Abr. 524 ; *S. C.* 3 Dane's Abr. 19 ; and to the point, that the laying out of the new highway from Malden to Stoneham, of a certain width, operated as a discontinuance of the original highway over the place in question, *Commonwealth* v. *Westborough*, 3 Mass. R. 406 ; *Commonwealth* v. *Cambridge*, 7 Mass. R. 158 ; *Bliss* v. *Deerfield*, 13 Pick. 102.

*H. H. Fuller* and *Washburn*, for the defendant, to the point, that a public highway may be established by evidence of user, cited *Commonwealth* v. *Low*, 3 Pick. 408 ; that the laying out of the highway from Malden to Stoneham did not operate as a discontinuance of any portion of the ancient highway, *Bliss* v. *Deerfield*, 13 Pick. 102 ; and as to the erection of pounds on highways, Ancient Chart. 308.

*April term 1836.*

SHAW C. J. delivered the opinion of the Court. In the present case it seems to be proper first to consider the motion

made by the defendant for a new trial, on the ground of newly discovered evidence. Supposing it satisfactorily proved, by the defendant's affidavit, that he did not discover this evidence til. so late a stage in the trial, that he could not avail himself of it, we are of opinion, that it forms no ground for setting aside the verdict. That evidence now exhibited cons' ts of a record of the Court of Common Pleas laying out a highway from Malden to Stoneham in 1811 ; that court, at that time, having and exercising that jurisdiction upon that subject, which had before been exercised by the Court of Sessions, and now by the county commissioners. The construction and legal effect of that proceeding, in its application to the subject mat ter of this action, are purely matter of law, and the facts, to which they apply, are wholly uncontested. The reference therefore of these proceedings to a jury must be only *pro formâ*, because it must be done with instructions how to apply them, in point of law, and there would be no matter of fact, substantially in controversy, for the jury to find.

The question then is whether, if those proceedings had been laid before the jury at the trial, it would have made any differ ence ; and we think it would not. . A portion of the line o road laid out in 1811, lies opposite to the place in controversy ; and the argument of the plaintiff is, that though the ancient way at that place was more than three rods wide, yet that the effect of this proceeding was to reduce the width of the road to three rods ; that this operated by necessary legal implication, as a discontinuance of the highway, over all the land lying westerly of the three rod way thus established, and consequently the abutters on the westerly side, had a right to advance their fences and buildings, and to claim as their own property, all the land up to the westerly line thus fixed. The cases of *Commonwealth* v. *Westborough*, 3 Mass. R. 406, and *Commonwealth* v. *Cambridge*, 7 Mass. R. 158, are relied upon to sustain this position. But we think those cases proceeded on a very different principle, and afford no authority for the principle advanced. Those cases went on the ground, that the " alteration " of a road is technical, and means, the substitution of one line of way for another, the establishment of one, and the discontinuance of that for which it is substituted ;

and, therefore, where an alteration, and not a new way, is prayed for, and is adjudged to be of common convenience, and is laid out accordingly, the adjudication follows the petition, the authority of the committee to lay out follows the adjudication, and therefore the laying out of a new section for the highway between two *termini*, in the old way, pursuant to such petition and adjudication, is an alteration, a substitution of one for the other, and of course, by legal implication, a discontinuance of that part of the old highway, lying between the same *termini*. These cases, so far from sustaining the principle which they are brought to support, by showing what is deemed requisite to effect the discontinuance of an existing highway, are strong authorities to show that this proceeding did not effect such discontinuance.

If the locating committee, in the present case, had intended to discontinue any portion of the ancient highway, which it would be difficult to infer from their doings, their proceedings in that respect would be wholly beyond their power and jurisdiction, and consequently inoperative and void. The portion of road, of which the premises in controversy are alleged to be parcel, may as well be deemed a part of the ancient highway from Salem to Medford, as of the way from Malden to South Reading, the two roads, in this place, for a short distance co inciding with each other. The petition not in any degree affecting the road from Salem to Medford, and not seeking the " alteration " or discontinuance of any old road, there was no notice to the public that any such alteration or discontinuance was contemplated, no adjudication of the court authorized any such discontinuance, and therefore the committee had not power to discontinue any portion of the existing highway.

But it does not appear, from the proceedings of the locating committee, that they had any such intention ; none such is expressed, and indeed the result is claimed rather as a legal implication from the act of the committee, than from any manifestation of such an intent. The effect of the location, as made by the committee, was to straighten and fix the easterly line of the highway in this part ; and as the old highway in that section, was of somewhat irregular width, if any corner or portion of the land of any private individual on the westerly

side, came within three rods of the line thus fixed, it would thereby be cut off and set apart for the use of the public as a highway, so that the way should be at least three rods wide upon the section thus fixed. But if, by location, usage or otherwise, there was an existing highway, lying westerly of the three rod way thus fixed, it was left unaffected by their proceedings. The discovery of these proceedings, therefore, affords no ground for a new trial.

Then the question recurs upon the exceptions stated in the report of the judge.

It was contended on the part of the plaintiff, that as this was an ancient highway, of the location of which no record was or could be produced, it was proved only by public use, and whenever a public or private easement is proved by use only, the limitations and restrictions of the right, as well as the right itself, are established by such use, and of course no right can oe established, beyond what has been in fact used and enjoyed. This, as a general rule, is correct ; but if it is intended to say, n regard to ancient highways, that the right of the public is limited to that portion of the highway usually called the travelled path, that part actually used and worn by feet or wheels, it is a misapplication of the rule. Where a tract three or four rods wide, such as is usually laid out as a highway, and like the ancient road in question, which was the old thoroughfare from Salem through Medford to Boston, has been used as a highway, although twenty or thirty feet in width only have been used as a travelled path, still this is such a use of the whole as constitutes evidence of the right of the public to use it for a highway, by widening the travelled path, or otherwise, as the increased travel and the exigencies of the public may require.

And so the term highway must have been understood, in the statute cited and relied upon at the trial, *St.* 1786, *c.* 67, § 7. It provides that when buildings or fences have been erected fronting upon or against any training field, highway, &c., where from length of time or otherwise the breadth or quantity thereof is not known, or can be made certain by the records, or by any other boundaries, and such fences have been upheld and continued forty years, they shall be deemed the true ancient boundaries thereof.

27 *

In the case supposed by the statute, the highway cannot be proved by records ; it is therefore a highway proved by use and enjoyment.   If it was limited to the actually travelled path, then no fence could be intended, except such as is built immediately upon or against such travelled path ; which I think could not have been intended, because, in such case, no such evidence of boundaries would have been necessary, and the statute would have been useless.   We think the statute had reference to the usage of the country.   Now in practice it is well known, that where roads are laid through the country three or four rods wide, twenty or thirty feet of the width thereof is appropriated to actual travel, to be widened from time to time, or otherwise used by the public, as the con venience of the public may require.   The statute presupposes a case where it is evident from ancient use and enjoyment, that a highway has been laid out in some lawful manner, and the fences upon or against the highway, thus understood, shall be taken and deemed to be the true ancient boundaries of such highway.   Still there is room for question in each particular case, whether a fence more or less near a highway, is " upon or against the highway " within the meaning of the statute.   A highway may be laid through a forest or over a sterile plain or morass, where it does not suit the purposes of the owner to enclose and fence his land immediately against the way, but he may have a tract enclosed at some distance, and a fence against it, parallel to the road or otherwise.   Here it will be a question of fact for the jury, whether this is a fence " upon " or " against " the highway ; if so, and it has been kept up the required term, it becomes a fixed boundary, by force of the statute ; but otherwise the statute does not apply to it, and the bounds and limits of the highway must be sought from other evidence.

It was, we think, in reference to this construction of the statute, that the jury were instructed, that a fence placed as the fence is shown to have stood in this case, was presumed to be the boundary of the highway, yet it was *primâ facie* evidence only, and might be rebutted by other evidence ; and the jury were to judge whether any evidence had been shown, sufficient to rebut the presumption, that the ancient wall to which the

evidence applied, was in fact the true line or boundary of the highway at that place. Under this instruction it was competent for the jury to determine from the evidence and circumstances of the case, from the nature and quality and value of the soil, the nearness or distance of the wall from the highway, and from all other circumstances, whether it was a fence made to separate the plaintiff's close from the highway, and whether in the words of the statute it was a fence " upon or against the highway," and if so, to consider it a boundary, otherwise not.

It was also contended, that the statute did not apply, because, for a period of between twenty and thirty years, the pound has been placed between the fence and the travelled path, so that in truth, the fence did not stand for forty years, as a fence upon a highway. But we think this is taking a narrow and imperfect view of the subject. It appears from the evidence, that the pound was erected there about the year 1807. It is further shown, that the old wall which is claimed as the boundary of the highway against the plaintiff's land, has stood there more than sixty-seven years ; and those whose recollection goes back farthest, speak of it as an old wall, when they first recollect it. This therefore is evidence, from which a jury may safely infer that it had stood there many more than sixty-seven years. It is matter of history, that Malden is an old settled town, that the most ancient considerable road in the colony was from Salem to Boston, through Medford, which is the road in question. If then it had stood there forty years before 1807, which is highly probable and fairly to be inferred from the evidence, it had become the boundary of the highway, by force of the statute, before the pound was built The building of the pound was a mere *purpresture*, a nuisance or encroachment upon the public easement, which did not destroy that easement. It was still a highway.

One other exception was taken to the direction of the judge at nisi prius. There was evidence to show, that a part of the land in controversy consisted of a bluff or declivity, lying between the two travelled parts of the roads, and which of itself has not been actually used for travel. If this exception is founded on the principle, that where a highway is not prov·

ed by record, but by prescription, that is, by actual use, no part of the surface is to be taken to be highway, except that which is actually broken and worn by feet, wheels and carriages, I have already stated the grounds on which it appears to me that this assumption is founded on a fallacy. The long and uninterrupted use of a public highway, is legally and justly taken to be evidence of a previous legal and regular proceeding, by which a certain portion of land has been appropriated to public use as a highway. But of what precise width, in what precise direction, and precisely how much surface of land, is thus appropriated, as no record or document specifies, it must be inferred from circumstances. Suppose the road deviates, or divides into two parts, to avoid a rock, a hill or a slough, which the public cannot then afford, and do not think fit to remove; but afterwards the rock is blown, the hill levelled, the slough filled, to meet the public exigencies and calls for improvement, may not the public so improve, because that precise spot has not before been travelled upon? It appears to me difficult to say, in point of law, that they cannot; and the proper mode of considering it, seems to be to regard it as a question of fact, to be inferred from all the circumstances of the case, whether the place in question was or was not included in the land appropriated to public use, as a highway. Cases may be supposed, in which it would clearly appear that an intermediate tract between two travelled paths is so situated, as to show that it was not included in the appropriation to the public, for a highway, and in such a case that the right of the owner in it would not be impaired; on the contrary, an intermediate strip may be so situated, as to render it very manifest, that it was embraced in the public appropriation, though not actually fitted and prepared for travel at the time when the way was first used. And whether any particular strip of land is the one or the other, is a question of fact for a jury, under all the circumstances of the case. In all such cases, the owner of the soil would have the benefit of the rule, that this private right is not to be incumbered by the public without showing satisfactorily that it has been appropriated to public use. In this case it was left to the jury upon the circumstances of the case, to find whether the portion of land, be

tween the travelled paths, was a part of the highway or not ; Sprague
and the Court are all of opinion that that direction was right.   *v.*
  Waite.
*Judgment on the verdict.*