**LORI GILMORE MALLOY f/k/a LORI GILMORE, Appellant/Plaintiff**

**v.**

**CARMEN REYES, MARY J. FLORES, JEAN PAUL, Executor of the Estate of Earl Christian, LEAYLE BATTISTE, Administrator of the Estate of Buelah Battiste, KARL R. PERCELL and CAROLYN P. HERMON-PERCELL, Co-Trustees of the Trust Agreement of Karl R. Percell dated January 28, 1999 and the Trust Agreement of Carolyn P. Hermon-Percell dated January 28, 1999, HARRY GAURILOFF, and GOVERNMENT OF THE VIRGIN ISLANDS, Appellees/Defendants**

S. Ct. Civil No. 2012-0081

Supreme Court of the Virgin Islands

July 22, 2014

163

James M. Derr, Esq., St. Thomas, USVI, *Attorney for Appellant*.

Atiim D. Abraham, Esq., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee Government of the Virgin Islands*.

KARL R. PERCELL, ESQ., Law Offices of Percell & Hermon-Percell, P.C., St. Thomas, USVI, *Attorney for Appellees Leayle Battiste, Mary J. Flores, Jean Paul, and Carmen Reyes.*

LEMUEL F. CALLWOOD, ESQ., St. Thomas, USVI, *Attorney for Appellees Carolyn P. Hermon-Percell and Karl R. Percell.*[1]

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

### (July 22, 2014)

CABRET, *Associate Justice.* Lori Gilmore Malloy appeals a Superior Court judgment holding that an unpaved trail providing access to her property on St. John is no longer a public right-of-way. We reverse because the Superior Court erred in concluding that the trail was abandoned and that, as a result, the trail lost its public status. Furthermore, we remand for the Superior Court to set out the metes and bounds of the public easement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

First settled by Danish colonists in the 1720s, the east end peninsula of St. John was an isolated and sparsely populated area of the Danish West Indies. In 1780, Peter Oxholm surveyed the islands of the Danish West Indies for the Danish government. At that time, there were five settlements on the east end, linked to Cruz Bay on the west end — the administrative and economic center of the island — by a road Oxholm marked in yellow. This road connected the wider network of roads throughout the island to the settlements in the east end peninsula by first running south near the coast then turning east, toward Newfound Bay, to reach inland settlements at higher elevations. Another map created by Oxholm in 1800 depicted the same road marked in yellow connecting the east end community to the rest of St. John.

Between 1822 and 1913, the east end was divided into fifty-one parcels, with deeds from this time referencing a public road in the area. Then, in 1916, Denmark and the United States entered into a treaty transferring the Danish West Indies — comprising the islands of St. John, transferring

[1] Although Karl R. Percell, Esq., and Lemuel F. Callwood, Esq., filed notices of appearance, they did not file briefs or otherwise participate in this appeal.

the Danish West Indies — comprising the islands of St. John, St. Thomas, St. Croix, Water Island, and associated islands and cays — to the United States.[2] Soon after assuming control over these islands on March 31, 1917, the U.S. government — like Denmark before it — sent a survey team to the newly established United States Virgin Islands. The resulting survey map, produced by the U.S. Coast and Geodetic Survey ("CGS"), depicted the east end road turning inland into the hills of the east end like Oxholm's maps before it.

St. John's east end peninsula as depicted in the U.S. Coast and Geodetic Survey map. Malloy introduced the full map as an exhibit at trial.

---

[2] The complete Convention Between the United States and Denmark for Cession of the Danish West Indies is *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 27-38 (preceding V.I. CODE ANN. tit. 1). This treaty was signed on August 4, 1916, and later ratified by the United States Senate on September 7, 1916. The Danish and U.S. governments exchanged ratifications on January 17, 1917, and the transfer became effective March 31, 1917. *See* 1 V.I.C. § 171 (recognizing March 31 as "Transfer Day").

The CGS's accompanying descriptive report explained that "[t]he roads are scarcely more than good mountain trails. As they are all public roads and maintained they are shown in full." This map was republished in 1934, still marking the road as originally depicted in Oxholm's maps, but later 1958 and 1982 reproductions showed the road on the east end taking a different path — continuing south along the coast instead of turning inland. Later maps maintained by the Virgin Islands Government similarly showed the road continuing south along the coast. This road, running to Long Bay at the southern tip of the east end peninsula, is commonly referred to as East End Road and is officially designated as Route 10 by the Virgin Islands Government. The portion of this road turning inland toward Newfound Bay remains unpaved, and is still marked on more recent survey maps with notes indicating uncertainty as to whether this portion of the road — commonly referred to as Old Broad Road — is a public right-of-way or just a trail on private property.

In 1993, Malloy purchased one of the parcels on the east end, Parcel 6S of Estate Hansen Bay, also called "Pleasant Lookout." After purchasing Parcel 6S, Malloy used Old Broad Road several times to access her property before leaving the island in 2000. In 2004, the owners of neighboring Parcel 6T, "Estate Hard Labor," and Parcel 9A of Newfound Bay, agreed to grant one another easements over the portion of the road crossing their properties, and to divide the cost of paving and expanding Old Broad Road to make Parcels 6T and 9A accessible by vehicle. On April 11, 2008, Malloy was informed by email that the Virgin Islands Department of Public Works ("DPW") issued a permit allowing the owners of Parcels 6T and 9A to develop a private roadway that she would not be able to use without obtaining an easement. *See* 20 V.I.C. § 7(a) ("No person shall cut, grade, construct or cover with concrete or any other surface material any private road or driveway which intersects with a public road without first applying for, and obtaining, a permit from the Commissioner of Public Works.").

Malloy returned in 2009 to discover a chain and "no trespassing" sign blocking Old Broad Road. She then brought this action against the owners of the neighboring properties and the Government of the Virgin Islands, seeking a declaratory judgment that Old Broad Road is a public right-of-way — or alternatively that she is entitled to a private prescriptive easement, easement by implication, or easement by necessity — and seeking injunctive relief ensuring access to her property.

The Superior Court held a two-day bench trial beginning May 8, 2012. During the course of trial, Malloy testified first, followed by longtime east end residents Violet Sewer Mahabir, Guy Benjamin, and Kendell Antony, who agreed that Old Broad Road has always been considered a public right-of-way by the community, with Mahabir and Benjamin testifying that a DPW employee maintained a portion of the road from 1956 to sometime in the 1970s. This maintenance included relocating and straightening a portion of the road that was blocked by a boulder, allowing people to reach the house immediately west of Parcel 6S[3] on Old Broad Road by vehicle.

Malloy also called historian George Tyson to provide expert testimony on the history of roads on the east end. Tyson testified that he had examined the historical documents, including the Oxholm and CGS maps, and concluded that Old Broad Road was a public right-of-way, or — as described in Danish times — a "King's Road." He based this conclusion partly on his determination that by marking this right-of-way in yellow in the 1780 and 1800 maps, Oxholm was marking it as a public road maintained by Danish colonial authorities. During Tyson's research, he also came across two deeds — one from 1835 and another from 1912 — transferring land in the area, both referencing a public road in the area of what is now called Old Broad Road. Finally, Tyson testified that based on his analysis, the road depicted in the Oxholm and CGS maps ended at the top of the hill where Parcel 6S is located.

Malloy also introduced the video deposition testimony of Marvin Berning. In his deposition, Berning stated that he has extensive experience surveying the east end of St. John and served as a Special Master in property disputes in the Virgin Islands. He testified that he has done extensive surveying in the east end to determine property boundaries, searching through property records in the Virgin Islands and

---

[3] As Malloy points out, the Superior Court incorrectly stated that this house, referred to at trial as the Anton George house, is located on Parcel 6AE. All evidence introduced at trial indicates that the Anton George house is located to the west of Parcel 6S, whereas Parcel 6AE is located to the east of Parcel 6S. Therefore, the Superior Court's finding that the house is located on Parcel 6AE was clearly erroneous. *Yusuf v. Hamed*, 59 V.I. 841, 857 (V.I. 2013) (a finding of fact is clearly erroneous where it is "completely devoid of minimum evidentiary support or [has] no rational relationship to the supportive evidentiary data"). But it is unclear how this erroneous finding — likely a typographical error — affected the Superior Court's ultimate holding.

Denmark, interviewing longtime residents, and commissioning aerial photography. Berning's analysis resulted in the same conclusion as Tyson's, that the road marked in the Oxholm and CGS maps ran to the top of the hill on Parcel 6S, and was consistently identified in these historical maps as a public right-of-way. Following Berning's testimony, Malloy rested.

The Government then called Chester Paul, a DPW Territorial Surveyor. On cross-examination, Paul initially agreed that the CGS map showed the road going "to the plateau at the top of the hill," but then immediately following this statement testified that — based on an analysis conducted two days before trial — the road depicted in the CGS map ends on Parcel 6T, 350 feet short of Parcel 6S. Malloy objected, moving to strike Paul's testimony because he failed to supplement his expert report with this new evidence, but the Superior Court denied this motion. The Government then called Wayne Callwood, a Public Surveyor with the Lieutenant Governor's Office, who testified that he was not aware of any surveys done by the Government that include Old Broad Road and that he has never seen anything suggesting that the Government maintains any roads in that area. In a July 26, 2012 Opinion and Order, the Superior Court held that even though the evidence showed that Old Broad Road was once a public trail, it is no longer a public right-of-way because it was abandoned, but held that Malloy has a prescriptive easement by necessity over the road because she has no other means of accessing her property. Malloy filed a timely notice of appeal on August 17, 2012.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Because the Superior Court's July 26, 2012 Order "dispose[d] of all of the claims submitted to the Superior Court for adjudication," it was a final order, and this Court has jurisdiction over Malloy's appeal.[4] *Chapman v. Cornwall,* 58 V.I. 431,

[4] Although the Superior Court rejected Malloy's claim that Old Broad Road is a public right-of-way, it ruled in her favor on an alternative cause of action in her complaint: that she had an easement by necessity because the road is the only means of accessing her property. Federal appellate courts maintain that "if [the district court] grants the ultimate relief a party requested, even though on grounds other than those urged by the prevailing party, that party

436 (V.I. 2013) (quoting *Matthew v. Herman,* 56 V.I. 674, 677 (V.I. 2012)).

## III. DISCUSSION

Malloy argues that this Court should reverse because the undisputed historical evidence established that Old Broad Road was a public right-of-way under both Danish and American administration, and the Superior Court erred in holding that it was subsequently abandoned by the Virgin Islands Government. She also asserts that the Superior Court erred in characterizing Berning as a lay witness and admitting Paul's testimony that Old Broad Road ended before reaching Parcel 6S. We agree on all counts.

### A. Status of Old Broad Road

The crux of Malloy's arguments is her assertion that because Old Broad Road was a public right-of-way before the Virgin Islands became part of the United States in 1917, it remains a public right-of-way today. The Superior Court found that "[t]he Oxholm maps and other evidence indicate that rights of way of unknown dimensions and passable only on foot or horseback were recognized as public 'riding trails' in Danish times," and continued to be recognized as public trails shortly after the Virgin Islands became a U.S. territory. Notwithstanding the finding that the roads outlined on the Oxholm and CGS maps — including Old Broad Road — were historically public, the Superior Court held that "Virgin Islands law has not generally recognized nor established standards for a 'public trail,' and [Malloy] has presented no evidence that the disputed

---

is generally not aggrieved by the judgment and may not appeal." *Concerned Citizens of Cohocton Valley, Inc. v. N.Y. State Dep't of Envt'l Conservation,* 127 F.3d 201, 204 (2d Cir. 1997) (internal quotation marks omitted); *but see Camreta v. Greene,* 131 S. Ct. 2020, 2029-30, 179 L. Ed. 2d 1118 (2011) ("[t]hat the victor has filed the appeal does not deprive us of jurisdiction" where the prevailing party "may yet have a sufficient interest in the outcome of a litigated issue to present a case or controversy" (internal quotation marks and citation omitted)). But regardless of whether Malloy's appeal presents a "case or controversy," 4 V.I.C. § 32(a) vests this Court with "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court" without restricting that jurisdiction only to appeals taken by aggrieved parties. *Farrell v. People,* 54 V.I. 600, 607 (V.I. 2011). Thus, the requirement that a party be aggrieved by a Superior Court ruling to have standing to appeal — to the extent it applies at all — is at best "a claims processing rule" subject to waiver by the parties. *Id.* at 608. None of the parties raise this issue, and therefore it is waived.

right-of-way has been laid out and accepted by the Virgin Islands government as a public road." The Superior Court further held that even if Old Broad Road retained its historical status as a public right-of-way, "there is clear and convincing evidence that the disputed roadway has been abandoned." We examine each holding in turn, reviewing the Superior Court's application of law *de novo*, and its findings of fact for clear error. *Brunn v. Dowdye*, 59 V.I. 899, 904 (V.I. 2013).

### 1. Significance of Old Broad Road's historical status

■■■■ Malloy insists that Old Broad Road's historical status as a public right-of-way must control here, regardless of whether the Virgin Islands Government has accepted it as a public highway under title 20, chapter 1 of the Virgin Islands Code.[5] We agree. The United States Supreme Court has long recognized that when a territory is transferred to the United States by a foreign country, ownership of public property transfers to the U.S. government, while private property rights remain unaffected. *See, e.g.*, *Vilas v. City of Manila*, 220 U.S. 345, 357, 31 S. Ct. 416, 55 L. Ed. 491 (1911) ("By the cession[,] public property passes from one government to the other, but private property remains as before."); *More v. Steinbach*, 127 U.S. 70, 78, 8 S. Ct. 1067, 32 L. Ed. 51 (1888) ("By the cession of California to the United States . . . [p]olitical jurisdiction and sovereignty over the territory and public property . . . passed to the United States."); *Tyler v. Magwire*, 84 U.S. 253, 278, 21 L. Ed. 576 (1872) (upon the transfer of the Louisiana territory from France to the United States, "legal title to the land vested . . . in the United States, as the successor of the former sovereign"); *United States v. Forbes' Heirs*, 40 U.S. 173, 174, 10 L. Ed. 701 (1841) (with the transfer of Florida from Spain to the United States, "[a]ll the public domain of Spain was ceded to this government . . . and the title in fee to the same vested in the United

---

[5] Chapter 1 of title 20 of the Virgin Islands Code, governing public highways in the Territory, provides that "[t]he duty of keeping the public highways . . . in good serviceable condition is incumbent upon the government of the United States Virgin Islands," 20 V.I.C. § 1(a), and that "[t]he Commissioner of Public Works shall maintain official maps showing in detail the boundaries and rights of way of all public highways in the Virgin Islands." 20 V.I.C. § 2(a). Furthermore, the Commissioner of Public Works may accept easements on behalf of the Government to construct new highways, 20 V.I.C. § 3(a), and is "authorized to receive offers to dedicate private roads to public use throughout the Virgin Islands" subject to the approval of the Legislature. 20 V.I.C. § 3a(a).

States"). Moreover, the 1916 treaty transferring the Virgin Islands from Denmark to the United States clearly followed this longstanding legal principle, providing that "[t]his cession includes the right of property in all public, government, or crown lands . . . and all other public property of every kind or description now belonging to Denmark."[6] *See also Red Hook Marina Corp. v. Antilles Yachting Corp.*, 9 V.I. 236, 242 & n.14 (D.V.I. 1971) ("[P]roperty rights in the islands are rooted in the law existing while the islands were under Danish sovereignty, which law remained in force even after the transfer of sovereignty to the United States in 1917.") (collecting cases); *Callwood v. Kean*, 189 F.2d 565, 582 n.6, 2 V.I. 526 (3d Cir. 1951) ("Rights to property in St. Thomas which vested under the Danish law in force in that island . . . were not affected by the change of sovereignty."); *cf. Newfound Mgmt. Corp. v. Lewis*, 131 F.3d 108, 118-19, 37 V.I. 612 (3d Cir. 1997) (examining property titles executed before 1917 to determine boundary lines on the east end of St. John); *Smith v. deFreitas*, 329 F.2d 629, 631-35, 4 V.I. 525 (3d Cir. 1964) (examining Danish property law to determine a party's right to an easement by necessity). So while it is true that Malloy presented no evidence that the Virgin Islands Government accepted Old Broad Road as a public right-of-way pursuant to title 20, chapter 1 of the Virgin Islands Code, this has no bearing on its status given the Superior Court's finding that it was a public trail before the transfer of sovereignty in 1917. *Cf. Hodge v. Bluebeard's Castle, Inc.*, 44 V.I. 242, 247-48 (V.I. Super. Ct. 2002) ("[I]t is not correct that [the statutory] procedure represents the only way a road may become a 'public road.' . . . Thus, the [c]ourt cannot conclude that noncompliance with the dedication provisions means that the road is not public.").

Instead, because Old Broad Road was recognized as a public trail by the Danish government before 1917, and by the U.S. government after, it is clear that the Danish government's interest in Old Broad Road was among the public property interests transferred to the U.S. government on March 31, 1917. And following the transfer, Congress provided in the Organic Act of 1936[7] that "[a]ll property which may have been acquired

---

[6] Convention Between the United States and Denmark for Cession of the Danish West Indies, art. 1, Aug. 4, 1916, 39 Stat. 1706.

[7] The complete Organic Act of 1936 is *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 45-71.

by the United States from Denmark in the Virgin Islands under the convention . . . is placed under the control of the Government of the Virgin Islands." 48 U.S.C. § 1405c(a); *see generally Water Isle Hotel & Beach Club, Ltd. v. Kon Tiki St. Thomas, Inc.*, 795 F.2d 325, 327 (3d Cir. 1986). Later, in a 1974 amendment to the Revised Organic Act of 1954,[8] Congress provided that "[a]ll right, title, and interest of the United States in the property placed under the control of the government of the Virgin Islands by section 1405c(a) of this title . . . is hereby conveyed to such government." 48 U.S.C. § 1545(b)(1). Accordingly, in light of the Superior Court's finding that the roads outlined on the Oxholm and CGS maps — including Old Broad Road — were "recognized as public riding trails" both in Danish times and after 1917, this public interest in Old Broad Road was acquired by the Virgin Islands Government in 1974 by virtue of 48 U.S.C. § 1545(b)(1).

### 2. Abandonment

Despite the Superior Court's finding that Old Broad Road was historically public, the court found "there is clear and convincing evidence that the disputed roadway has been abandoned." Malloy argues that the Superior Court misapplied the common law doctrine of abandonment, and therefore Old Broad Road remains a public right-of-way.

 Although many witnesses described the road as "abandoned" in their testimony, no party raised the common law doctrine of abandonment at any time during the trial proceedings. Instead, the Superior Court raised and decided this issue *sua sponte,* without providing notice to the parties or an opportunity to brief this issue. This in itself constitutes error because in raising and deciding an issue without providing notice or a chance to respond, the Superior Court denied Malloy her right to be heard.[9] *Brunn,*

---

[8] The complete Revised Organic Act of 1954 is *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177.

[9] Furthermore, raising the issue of abandonment *sua sponte* was all the more inappropriate here because Malloy brought this suit to compel the Government to recognize Old Broad Road as a public right-of-way, meaning that abandonment acted essentially as an affirmative defense in this case. It is unquestionably error for the Superior Court to raise an affirmative defense *sua sponte* on behalf of a defending party where that party has waived the issue by failing to raise it or support it with evidence. *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 761 (V.I. 2014).

59 V.I. at 905 (citing *Mendez v. Gov't of the V.I.*, 56 V.I. 194, 205 (V.I. 2012)).

█ The Superior Court compounded this error by applying a common law doctrine this Court has never addressed without conducting the appropriate analysis as set forth in *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967, 981-84 (V.I. 2011). As we explained in *Banks* and subsequent cases, when the Superior Court confronts an issue of common law that this Court has yet to address — or has only addressed through erroneous reliance on former 1 V.I.C. § 4 (repealed 2004) — it must conduct a three-factor *Banks* analysis: "first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands." *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014) (citing *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014)); *see also Simon v. Joseph,* 59 V.I. 611, 623 (V.I. 2013); *Matthew,* 56 V.I. at 680-81; *Banks,* 55 V.I. at 979 ("[T]his Court and — to the extent not bound by precedent, the Superior Court — may determine the common law."). Here, the Superior Court erred in failing to give the parties an opportunity to brief the issue of abandonment of an easement[10] under the *Banks* framework, and further erred by failing to conduct a *Banks* analysis at all — instead merely citing a single case from another jurisdiction as though it were binding authority.

█ Although it does not appear that any other Virgin Islands court has ever addressed the abandonment of a public easement at common law, virtually every United States jurisdiction recognizes that " '[o]nce a

---

[10] Malloy argues that the Danish government owned all public roads on St. John in fee simple — not merely as easements — and therefore abandonment does not apply here at all. Because Malloy cited no relevant legal authorities in support of this argument — such as an authority on Danish property law — it is waived, V.I.S.CT.R. 22(m), and we assume for the purposes of this appeal that the Virgin Islands Government's interest in Old Broad Road is the same as any other public road in the Territory; an easement. *See* 28 V.I.C. § 412(1)-(2) (the Government can only acquire a fee simple interest in land "when taken for public buildings or grounds or for permanent buildings, for reservoirs and dams, and permanent floodings thereby," and acquires an easement in land "taken for any other use"); 20 V.I.C. § 3(a) ("the Commissioner of Public Works may accept . . . easements [to construct or widen a highway] on behalf of the government"). Because we ultimately conclude that the Superior Court erred in holding that Old Broad Road was abandoned, this assumption does not affect the outcome here.

highway always a highway' is an ancient maxim of the common law." *Hansen v. Green*, 275 Ill. 221, 113 N.E. 982, 984 (1916); *see also Central Pac. Ry. Co. v. Alameda Cnty.*, 284 U.S. 463, 468, 52 S. Ct. 225, 76 L. Ed. 402 (1932) ("[P]roof of the establishment of a road raises a presumption of its continuance."); *E & J Holding Corp. v. Noto*, 126 A.D.2d 641, 510 N.Y.S.2d 899, 901-02 (N.Y. 1987). This maxim only "gives way to the rules of law concerning the abandonment or vacation of a highway" which serve as a narrow (and disfavored) exception to the rule. 39 AM. JUR. 2D *Highways, Streets, and Bridges* § 150 ("The discontinuance of a public highway is not favored in the law.") (collecting cases); *see also Davenhall v. Cameron*, 116 N.H. 695, 366 A.2d 499, 500 (1976) ("Once a highway is established, it is presumed to exist until discontinued, and discontinuance is not favored in the law." (citation omitted)); *Bownes v. Winston Cnty.*, 481 So. 2d 362, 363 (Ala. 1985) (" '[O]nce a highway, always a highway,' . . . is subject to the qualification that a highway . . . continues until it ceases to be such by the action of the general public . . . or by action of the public authorities."); 39A C.J.S. *Highways* § 128 (same) (collecting cases). And while it appears that nearly every jurisdiction at one time allowed the abandonment of a public right-of-way at common law,[11] these jurisdictions disagreed on what a party must show in order to establish such abandonment — with some jurisdictions allowing mere nonuse over a prolonged period to be sufficient,[12] and others holding that there must also be evidence of an affirmative governmental act showing "an intention never to make use of it again." *D.C. Transit Sys., Inc. v. State Roads Comm'n of Md.*, 265 Md. 622, 290 A.2d 807, 810 (1972); *see also S.C. Dep't of Transp. v. Hinson*

---

[11] Many jurisdictions have since adopted statutes governing abandonment, largely abrogating the common law. *See, e.g., McHenry v. Foutty*, 223 Ind. 335, 60 N.E.2d 781, 782 (1945) ("There must be a full and substantial compliance with the provisions and requirements of [the statute] to cause a vacation of an existing highway."); *Taggart v. Highway Bd. for N. Latah Cnty. Highway Dist.*, 771 P.2d 37, 38 (Idaho 1988) ("[T]he legislature has specified . . . the method for abandonment and vacation of county and highway district system highways."). Because the Virgin Islands Legislature has not adopted such a statute, we address this issue solely as one of common law and exclude cases relying on state statutes from our review of authorities. *Better Bldg. Maint. of the V.I., Inc.*, 60 V.I. at 757 (the second *Banks* factor requires us to identify the "rule adopted by a majority of *courts* of other jurisdictions").

[12] *See, e.g., Auerbach v. Parker*, 544 So. 2d 943, 945 (Ala. 1989) ("[N]onuser for a period of twenty years . . . will operate as a discontinuance of a public road."); *Shadan v. Town of Skowhegan*, 1997 ME 187, 700 A.2d 245, 247 (1997) ("The common law of abandonment recognizes that rights in public ways may be lost through neglect.").

*Family Holdings, LLC*, 361 S.C. 649, 606 S.E.2d 781, 784 (2004) ("strict proof of intent to abandon a public right-of-way" is required at common law). This second line of cases, requiring evidence of nonuse and an affirmative governmental act demonstrating the intent to abandon an easement "has been applied in most jurisdictions." *D.C. Transit Sys., Inc.*, 290 A.2d at 810 (collecting cases).[13]

■ Finally, and most importantly, limiting abandonment of a public easement to only those instances where the evidence shows both nonuse by the public and that the Government has taken an affirmative step demonstrating a clear intention "never to make use of it again" is the soundest rule for the Virgin Islands. Allowing the extinguishment of the public's right to an easement through simple neglect would make little sense given that no other public property interest may be lost this way. *See* 28 V.I.C. § 11 (the Government is not subject to an action for adverse possession); *New 52 Project, Inc. v. Proctor*, 122 Ohio St. 3d 1, 2009 Ohio 1766, 907 N.E.2d 305, 308 (2009) ("If one cannot adversely possess public property, then clearly an action for common-law abandonment of an easement due to nonuse of a public highway cannot be permitted.").

---

[13] *See, e.g., Picayune Wood Products Co. v. Alexander Mfg. Co.*, 227 Miss. 593, 86 So. 2d 480, 484 (1956) ("To effect an abandonment there must be an intention to abandon."); *Polk Cnty. v. Brown*, 260 Iowa 301, 149 N.W.2d 314, 317 (1967) ("Nonuser is not enough, unless coupled with affirmative evidence of a clear determination to abandon."); *Koenig v. Gaines*, 165 Colo. 371, 440 P.2d 155, 157 (1968) (nonuse for thirty years alone was not sufficient to show abandonment); *Mueller v. Hoblyn*, 887 P.2d 500, 505 (Wyo. 1994) ("Abandonment requires more than simple nonuse of an easement, no matter how long the period of nonuse."); *Chicago & E. Ill. Ry. Co. v. Road Dist. No. 10*, 187 N.E. 155, 156 (Ill. 1933); *Heath v. Parker*, 30 P.3d 746, 749 (Colo. App. 2000) ("Abandonment of a public road requires proof of intent to abandon and proof of nonuse."); *Montanaro v. Aspetuck Land Trust, Inc.*, 137 Conn. App. 1, 48 A.3d 107, 120 (2012) ("Most frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intention to abandon."); *Lague, Inc. v. Royea*, 152 Vt. 499, 568 A.2d 357, 359 (1989) ("[A]n abandonment may be established only by acts by the owner of the dominant tenement conclusively and unequivocally manifesting either a present intent to relinquish the easement or a purpose inconsistent with its future existence." (internal quotation marks omitted)); *Parlante v. Brooks*, 363 Mass. 879, 294 N.E.2d 424, 425 (1973) ("Mere nonuse of an easement does not of itself constitute abandonment."); *Bank of Fayetteville, N.A. v. Matilda's, Inc.*, 304 Ark. 518, 803 S.W.2d 549, 550 (1991) ("We recognize the rule that an easement may be lost by abandonment. Abandonment in this context means to relinquish or give up with the intent of never again resuming or claiming one's rights or interests." (citation omitted)); *United States v. Steinmetz*, 973 F.2d 212, 222 (3d Cir. 1992) ("[T]he United States cannot abandon its own property except by explicit acts." (citing *United States v. California*, 332 U.S. 19, 40, 67 S. Ct. 1658, 91 L. Ed. 1889 (1947))).

Furthermore, the last century has seen significant changes in the administration of the Territory — transitioning from a Danish colony to a U.S. territory, first under the administration of the Navy, then the Department of the Interior, then attaining greater local autonomy[14] — providing countless opportunities for the loss of records and the neglect of certain governmental functions. *See, e.g., Banks,* 55 V.I. at 976 n.4 (noting the loss of "microfilm containing legislative history" from a critical juncture in Virgin Islands history). Such simple neglect should not prejudice Virgin Islanders' right to the use of historically public rights-of-way that have existed for centuries.[15] Under this standard, once nonuse is shown, an explicit act of abandonment — such as an official action by DPW or the Legislature — is not required, as the intent to abandon a public easement can be shown through evidence "unequivocally manifesting either a present intent to relinquish the easement or a purpose inconsistent with its future existence." *Lague, Inc. v. Royea,* 152 Vt. 499, 568 A.2d 357, 359 (1989); *see also Picayune Wood Products Co. v. Alexander Mfg. Co.,* 227 Miss. 593, 86 So. 2d 480, 484 (1956) ("[T]he burden is on the one who asserts abandonment to prove it by clear and satisfactory evidence." (quoting 39 C.J.S. *Highways* § 130)).

---

[14] *Carty v. Beech Aircraft Corp.,* 679 F.2d 1051, 1054 n.3, 19 V.I. 641 (3d Cir. 1982) ("From 1917 until 1931, the Virgin Islands [was] under the administration of the Navy Department . . . . In 1931, administration of the Virgin Islands was transferred to the Interior Department."); *see also* Kristen David Adams, *The Folly of Uniformity? Lessons from the Restatement Movement,* 33 HOFSTRA L. REV. 423, 456 n.143 (2004) (summarizing Virgin Islands history); Jon M. Van Dyke, *The Evolving Legal Relationships Between the United States and Its Affiliated U.S.-Flag Islands,* 14 U. HAW. L. REV. 445, 494-99 (1992) (same).

[15] There may be instances where this rule will negatively impact private property rights, like when a property owner is under the impression her property is unencumbered, only to discover an ancient Danish road bisecting it. *See* Eric Goldwarg, *Known Unknowns: Ancient Roads in Northern New England,* 33 VT. L. REV. 355 (2008) (summarizing a similar fact pattern giving rise to litigation in Vermont); *but see Red Hook Marina Corp.,* 9 V.I. at 245 (because the shoreline was public property under Danish law it remains public, and a deed's "boundary description 'the sea' should reflect the presumed intent of the grantor to convey only as much land as he actually owned"). But determining whether the public's interest in these ancient rights-of-way is outweighed by the interests of private property owners is more appropriately left to the Legislature. *See Town of Bethel v. Wellford,* 186 Vt. 612, 987 A.2d 956, 958 (2009) ("In an effort to quell the uncertainty that the existence of ancient roads places on private property rights, in 2006, the Vermont Legislature passed Act 178, giving towns the option of . . . adding the roads to town highway maps by 2010. . . . and on July 1, 2015, all unidentified corridors will be discontinued.").

■■ Here, not only was there no evidence of an affirmative intent to abandon by the Government, but the record did not support a finding of nonuse either. As the Superior Court acknowledged, there was evidence that "the family members of Anton George . . . used the road," as did Malloy and other east end property owners to access their properties. This alone was sufficient to prevent a finding of nonuse. *Gay v. Dube,* 2012 ME 30, 39 A.3d 52, 55-56 (2012) (reversing a finding of abandonment by nonuse where the road was continuously used by the adjacent property owners, i.e., "the people for whom it was intended to be used"); *Small v. Binford,* 41 Ind. App. 440, 83 N.E. 507, 510 (1908) ("The fact that the road is rarely, if ever, used by persons other than the appellants, makes it none the less a public highway."). Moreover — even if the record supported a finding of nonuse — there was no evidence here of an intent to abandon by the Government. While Old Broad Road was omitted from the 1958 and 1982 republications of the CGS map and was never included as a public road in official DPW maps, simply omitting a public right-of-way from an official map — or even failing to maintain it — is not sufficient to allow a court to infer the intent to permanently abandon. *See Laney v. Garmon,* 66 So. 3d 766, 770 (Ala. Civ. App. 2010) ("The fact that the county did not consider the disputed roadway to be a county road and that it did not maintain the disputed roadway is . . . insufficient to prove abandonment."); *Moody v. Lindsey,* 202 Va. 1, 115 S.E.2d 894, 898 (1960) ("[M]ere failure of the public authorities to keep a road in repair, like mere nonuser, does not constitute an abandonment."); *cf. Bockstiegel v. Bd. of Cnty. Comm'rs of Lake Cnty.,* 97 P.3d 324, 332 (Colo. App. 2004) ("Construction of an alternate route, in addition to nonuse, reflects an intention to abandon by an official act."). Finally, even though DPW issued a permit to the owners of Parcels 6T and 9A allowing them to "excavat[e] . . . a thirty foot . . . right of way," the permit makes no reference to Old Broad Road and only provides for the division of Parcel 6T into nine parcels and the construction of a "right of way to access the new parcels." This does not demonstrate a present intent to relinquish Old Broad Road, nor is the permit inconsistent with Old Broad Road's continued existence as a public right-of-way.[16]

---

[16] Even if abandonment was established here, this would not terminate Malloy's right to use the road to access her property. *See Wright v. City of Monticello,* 345 Ark. 420, 47 S.W.3d 851, 857 (2001) ("[W]hen a public road is abandoned, it does not affect the private right of the

■ Accordingly, the evidence did not support the Superior Court's finding that the public's right to Old Broad Road was extinguished through abandonment, and we reverse the Superior Court's holding that Old Broad Road is no longer a public right-of-way. Furthermore, because "a judgment which affects an interest in real property must describe the interest with such certainty that the rights and liabilities of the parties are clearly fixed," we remand for the Superior Court to determine the metes and bounds of Old Broad Road. *Phillips Indus. v. Firkins,* 121 Idaho 693, 827 P.2d 706, 711 (Ct. App. 1992); *see also Las Vegas Pecan & Cattle Co. v. Zavala Cnty.,* 682 S.W.2d 254, 257 (Tex. 1984) (remanding for the trial court to "describe by metes and bounds the easement held by the County"); *Polhemus v. Cobb,* 653 So. 2d 964, 968 (Ala. 1995) (remanding for the trial court to "set out the exact scope of the easement" where the trial court "did not specify its dimensions" in its original order); *Sprague v. Waite,* 34 Mass. 309, 320, 17 Pick. 309 (1836) (where no document defines the dimensions of an ancient road, the "precise width, in what precise direction, and precisely how much surface of land, is thus appropriated . . . must be inferred from circumstances").

## B. Expert Testimony

■ Because we reverse on the ground that the Superior Court erred in holding that Old Broad Road was abandoned, it is not necessary for this Court to reach Malloy's evidentiary arguments. We nevertheless address these issues because they will undoubtedly recur on remand when the Superior Court determines the metes and bounds of the public right-of-way. *Hard Rock Café v. Lee,* 54 V.I. 622, 640 (V.I. 2011) ("[A]n appellate court . . . may, in the interests of judicial economy, . . . consider other issues that, while no longer affecting the outcome of the instant appeal, are likely to recur on remand." (internal quotation marks omitted)). Malloy argues that the Superior Court erred in characterizing Berning's testimony as lay testimony because she presented him as an·expert, and that the Superior Court abused its discretion in admitting Paul's testimony that Old Broad Road ended on Parcel 6T before ever reaching Malloy's property because he failed to supplement his expert report before trial.

occupants to the use of the abandoned road for purposes of ingress and egress."); *Moses v. State Highway Comm'n,* 261 N.C. 316, 134 S.E.2d 664, 666 (1964) ("Abutting property owners having a private access to a highway cannot be denied the right to enter and use a road constructed for public benefit.").

### 1. Marvin Berning's testimony

Malloy asserts that the Superior Court erred in failing to credit Berning's testimony as expert testimony. The Superior Court noted in its opinion that Berning was not offered as an expert witness. The question of whether Malloy offered Berning as an expert witness is one of fact that this Court reviews only for clear error. *Najawicz v. People,* 58 V.I. 315, 325 (V.I. 2013) (reviewing the Superior Court's findings regarding a party's trial conduct for clear error); *Yusuf v. Hamed,* 59 V.I. 841, 857 (V.I. 2013) (a finding of fact is clearly erroneous where it is "completely devoid of minimum evidentiary support or [has] no rational relationship to the supportive evidentiary data").

 While lay testimony has to be "rationally based on the witness's perception," FED. R. EVID. 701(a),[17] expert testimony does not, and instead is rooted in the "expert's scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Further, "[o]pinions or inferences based on scientific, technical, or other specialized knowledge within the scope of Rule 702 are not admissible as lay testimony under [Rule] 701. Such opinions or inferences, drawn from facts outside the witness's first-hand knowledge of the case, are admissible only as expert testimony." *United States v. York,* 572 F.3d 415, 420 (7th Cir. 2009) (citing *United States v. Conn,* 297 F.3d 548, 553-54 (7th Cir. 2002)) (internal quotation marks omitted); *see also James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207, 1214 (10th Cir. 2011) ("Rule 701 does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." (internal quotation marks omitted)). Therefore, if Berning did in fact testify only as a lay witness, any testimony given that was "beyond the realm of common experience" would have been inadmissible and — because this was a bench trial — we would presume the Superior Court did not consider it in rendering its judgment. *Farrell v. People,* 54 V.I. 600, 620 (V.I. 2011).

---

[17] The Federal Rules of Evidence apply in the Superior Court pursuant to section 15(b) of Act No. 7161 of the Virgin Islands Legislature. 2010 V.I. Sess. Laws 50. Act No. 7161 took effect upon the Governor's signature on April 7, 2010, and was in force at the time of trial in this case in May 2012. *Simmonds v. People,* 59 V.I. 480, 498-99 (V.I. 2013).

It is clear here that Berning qualified as an expert witness under Rule 702. He testified in his video deposition that he has a graduate-level education in engineering and worked as a surveyor in the Virgin Islands for several decades, conducting extensive research on property ownership and boundaries on the east end of St. John. This research included examining property records in the Territory and Denmark, speaking to property owners and residents on the east end, conducting multiple surveys, commissioning aerial photographs, serving as a Special Master in property disputes, and testifying as an expert numerous times before. Moreover, the Government did not object to any of his qualifications, and — as the United States Court of Appeals for the Third Circuit explained in another case involving an east end property dispute — "Berning had extensive experience in surveying activity on St. John. In addition, he had prepared an aerial survey of the East End and done personal research into documents of title in Denmark. Understandably, the defendants' counsel did not challenge Berning's qualifications as an expert at trial." *Newfound Mgmt. Corp.,* 131 F.3d at 118.

And although Malloy did not specifically move for the Superior Court to formally admit Berning as an expert witness, "[a] judge is not obliged to look into the questions posed by Rule 702 when neither side either requests or assists." *York,* 572 F.3d at 421 (quoting *United States v. Moore,* 521 F.3d 681, 685 (7th Cir. 2008)). This is particularly so when all parties involved in this case understood that Berning was testifying as an expert, with pre-trial documents identifying Berning as an expert witness — such as Malloy's "Motion for Leave to Permit Marvin Berning to Testify by Deposition," the Joint Pre-Trial Conference Order, and the exhibit list. Furthermore, the Government did not object when Berning's video deposition was played in court, Berning repeatedly made clear during the deposition that he was retained and testifying as an expert, and his expert report was later admitted into evidence without objection. *York,* 572 F.3d at 420-22 (a witness not offered as an expert at trial nonetheless properly presented expert testimony where opposing counsel did not object to his testimony); *cf. Tribble v. Evangelides,* 670 F.3d 753, 759-60 (7th Cir. 2012) (finding that a witness presented expert testimony even where she was not offered as an expert, and finding harmful error where that witness was not disclosed as an expert before trial).

Consequently, the Superior Court clearly erred in finding that Berning was not offered as an expert where both parties knew he was

called to provide expert testimony based exclusively on his specialized knowledge as a longtime surveyor in the east end of St. John. Although expert testimony is not necessarily afforded any greater weight simply by virtue of the witness's "expert" status, *see United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012) (an expert witness is subject to the same credibility evaluations as a lay witness), to the extent the Superior Court disregarded Berning's testimony because it was "beyond the realm of common experience," the Superior Court must give appropriate consideration to this expert testimony on remand.

### 2. Chester Paul's testimony

Malloy next argues that Paul's testimony that Old Broad Road ended on Parcel 6T, 350 feet short of Parcel 6S, was based on an undisclosed analysis done two days before trial, and therefore should not have been admitted. Malloy objected at trial, and Paul acknowledged that this opinion was not included in his expert report. We review the Superior Court's admission of evidence for an abuse of discretion. *George v. People*, 59 V.I. 368, 386 (V.I. 2013).

Federal Rule of Civil Procedure 26(e)(2)[18] requires a party to supplement its experts' reports and deposition testimony when the party learns of new information. *Davis v. Varlack Ventures, Inc.*, 59 V.I. 229, 234 (V.I. 2013). "This . . . requirement is a continuous one, requiring a party to supplement its disclosures when it becomes aware of new evidence." *Id.* If the party fails to do so, this evidence must be excluded unless the omission is substantially justified or harmless. FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). The burden of showing substantial justification or harmlessness rests with the party that failed to meet its continuing disclosure obligation — in this case the Government. *R & R Sails, Inc. v. Insurance Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) ("The party facing sanctions bears the burden of proving that its failure to

---

[18] Federal Rules of Civil Procedure 26 through 37 govern discovery in the Superior Court pursuant to Superior Court Rule 39. SUPER. CT. R. 39(a) ("Depositions and discovery shall be had in the Superior Court of the Virgin Islands, pursuant to the provisions of Rules 26 to 37, inclusive of the Federal Rules of Civil Procedure.").

disclose the required information was substantially justified or is harmless."); *see generally Davis,* 59 V.I. at 236-38.

 During cross-examination, Paul initially agreed that the CGS map showed Old Broad Road reaching the top of the hill where Parcel 6S is located. Immediately after this statement though, he stated that he "did a thorough analysis of the road that goes up to the hill and it falls 350 feet short of [Malloy's] property." Paul then acknowledged that he did this "thorough analysis" two days before trial and did not supplement his expert report. Despite this, the Superior Court overruled Malloy's objection, stating that "[i]t's a bench trial so I'll consider it." Unquestionably, discovery rules apply with equal force during a bench trial, as they are intended to prevent unfair surprise or prejudice to litigants by providing notice of the evidence that will be introduced against them, *see Reed v. Iowa Marine & Repair Corp.,* 16 F.3d 82, 85 (5th Cir. 1994) (the "basic purpose" of Rule 26(e) is to "prevent[] prejudice and surprise"), a concern that persists even when a court tries a case without a jury. And notably, the Government did not argue — either before the Superior Court or this Court — that its failure to supplement Paul's expert report was substantially justified or harmless. Instead, the Government acknowledges in its appellate brief that this new information "was not included in the report proffered to the [Superior] Court, nor [were] the results of [Paul's] recent analysis provided to the [Superior] Court," and asserts in a single sentence — in a conclusory fashion — that this admitted discovery violation "was not prejudicial to [Malloy] and consequently, [Malloy's] argument is without merit." In light of the Government's admitted discovery violation, and its complete failure to make any attempt to show that this violation was substantially justified or harmless, the Superior Court abused its discretion in admitting this testimony and must disregard it in making a metes and bounds determination on remand.

## IV. CONCLUSION

The Superior Court erred in holding that Old Broad Road was abandoned as a public right-of-way because the record did not support a finding of nonuse, and there was no evidence that the Government ever took an affirmative act demonstrating its intent to abandon it. Furthermore, the Superior Court clearly erred in characterizing Berning as a lay witness and abused its discretion in admitting evidence that was not

disclosed to Malloy before trial in violation of the discovery rules. Accordingly, we reverse the Superior Court's holding that Old Broad Road is not a public right-of-way due to abandonment, and remand for the Superior Court to determine the metes and bounds of this public easement.